**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| JOSE M. GONZALEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 1:24-cv-00982-DAE |
| | § | |
| INTERNATIONAL MEDICAL DEVICES, | § | |
| INC., *et al.,* | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**MOTION TO DISMISS**
**PLAINTIFF'S AMENDED CIVIL COMPLAINT**

Defendants International Medical Devices, Inc. ("IMD"), Menova International, Inc. ("Menova"), James J. Elist M.D., a Medical Corporation ("Elist Medical"), and James Elist, M.D. ("Dr. Elist") (collectively, "Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) to dismiss Plaintiff's Amended Civil Complaint ("FAC") and respectfully show:

**ARGUMENT**

Plaintiff seeks to recover under the Texas Deceptive Trade Practices Act ("DTPA") for economic losses he claims resulted from his receipt of a prescription penile implant. *See generally* FAC, ECF No. 23. The Court should, however, dismiss the FAC in its entirety because Plaintiff has neither alleged, nor can he otherwise present, facts sufficient to establish a *prima facie* case of personal jurisdiction over any of the Defendants, and, even if he could, he fails to state a DTPA claim on which relief can be granted.

**A.      Plaintiff's allegations.**

Plaintiff claims that sometime prior to May 19, 2022, while "browsing the internet," at his home in Webb County, Texas, he saw advertisements for the Penuma penile implant, a "Pre-Formed Penile Silicone Block" (the "Device"), on two websites he claims were jointly operated

1

by the Defendants. FAC, ECF No. 23, at 5, 15-16. Plaintiff claims that unspecified representations on these websites lead him to believe: (i) the Device had been cleared by the FDA as "safe and effective for men like him who had normal penises, but simply wanted their penises to be larger;" (ii) Device implantation "would result in a normal looking penis;" and (iii) the Device could be explanted without risk of adverse consequence. *Id*. at 5-6.

On May 19, 2022, Plaintiff traveled to Austin, Texas, to consult with urologist Todd Bryan Kansas, M.D., who allegedly told him the Device implantation procedure was low risk and reversible. *Id*. at 6, 11. Plaintiff then elected to move forward with the procedure, which Dr. Kansas performed on July 26, 2022. *Id*. at 6.

Plaintiff claims undesirable complications arose thereafter and believes (i) the representations he claims to have seen on the internet were false and (ii) Defendants failed to warn him of the risks associated with the Device. On these bases, he seeks to recover under the DTPA for economic losses he claims to have suffered as a result of receiving the implant.

**B.      The Court lacks personal jurisdiction over Defendants.**

When accepted as true, the jurisdictional facts alleged in the FAC do not establish a *prima facie* case for personal jurisdiction over any of the Defendants.

**1.  Legal standard.**

When personal jurisdiction is contested under Rule 12(b)(2), and the issue is determined without an evidentiary hearing, the plaintiff must make a *prima facie* showing of jurisdiction. *Mercer v. McKenzie Tank Lines, Inc.*, No. 4:18-cv-00695, 2018 WL 3218047, at *1 (S.D. Tex. July 2, 2018) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999)).

A district court sitting in diversity may exercise personal jurisdiction to the extent permitted by the laws of the forum state. *Mercer*, 2018 WL 3218047 at *2 (citing *Fielding V. Hubert Burda*

*Media, Inc.*, 415 F. 3d 419, 424 (5th Cir. 2005). The Texas long-arm statute allows jurisdiction to be exercised to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *See id*. Exercising personal jurisdiction over a nonresident defendant is consistent with the Fourteenth Amendment when the defendant has "'certain minimum contacts with [the forum] that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413-14, 104 S. Ct. 1868 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)); *Panda v. Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). Such minimum contacts can be established either through contacts sufficient to assert general jurisdiction or specific jurisdiction. *Mercer*, 2018 WL 3218047 at *2 (citing *Panda Brandywine*, 253 F.3d at 867-68)).

General jurisdiction—which permits a court to hear "any and all" claims against a nonresident defendant—exists only if the nonresident defendant's contacts with the state are so pervasive as to make it "essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S. Ct. 746 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). By contrast, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction," and, thus, arises only where the claims asserted "'arise out of or are related to' the defendant's forum conduct." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919 and *Helicopteros*, 466 U.S. at 414).

When personal jurisdiction is contested under Rule 12(b)(2), the plaintiff must make a *prima facie* showing of general or specific jurisdiction or suffer dismissal of his claims. *Mercer*, 2018 WL 3218047 at *2 (citing Fed. R. Civ. P. 12(b)(2)).

**2. Plaintiff cannot establish a *prima facie* case of general jurisdiction.**

The bar for establishing general jurisdiction is high and rarely met. *See Daimler*, 134 S. Ct. at 755–57 (observing that the Court has upheld general jurisdiction over a non-consenting foreign corporation only once since 1945) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448, 72 S. Ct. 437 (1952)). To meet that bar, the plaintiff must show that the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home" there. *Id.* at 754 (quoting *Goodyear*, 131 S. Ct. at 2851). A corporation is deemed at "home" where it is incorporated and has its principal place of business. *Id.* at 760. While general jurisdiction is not limited solely to these "paradigm" locations, a corporation will not be subject to general jurisdiction in a state merely because it "engages in a substantial, continuous, and systematic course of business" there. *Id.* at 760–61. Instead, a corporation may be subject to general jurisdiction outside the location where it is incorporated and has its principal place of business only in an "exceptional case." *Id.* at 761 n. 19. This is not such an exceptional case.

In the FAC, Plaintiff (correctly) alleges that Dr. Elist resides in California and that IMD, Menova, and Elist Medical are California corporations that maintain their respective principal places of business in California. FAC, ECF No. 23, at 3. The only alleged "contacts" these Defendants have with Texas is that they jointly advertise the Device on two websites that Plaintiff claims to have stumbled across while "browsing the internet [from] his home in Webb County, Texas." *Id.* at 5. These allegations, even if true, do not provide a basis to find that any of the Defendants are "essentially at home" in the lone star state. Plaintiff has not, therefore, made a *prima facie* case of general jurisdiction.

### 3.  Plaintiff cannot establish a *prima facie* case of specific jurisdiction.

Under "settled principles," a plaintiff cannot establish specific jurisdiction over a defendant unless he demonstrates that his cause of action arises from the defendant's purposeful contacts with the forum state.[1] As noted above, Defendants only alleged contact with Texas was advertising the Device on two websites that Plaintiff claims to have seen "[w]hile browsing the Internet [from] his home in Webb County, Texas." FAC, ECF No. 23, at 5. Even if true, these allegations are *woefully* insufficient to establish specific personal jurisdiction.

When a defendant's contacts with the forum are based on the defendant's online presence, courts look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Getagadget, LLC v. Jet Creations Inc.*, 2019 WL 9654858, at * 2 (W.D. Tex. Sept. 30, 2019) (citing *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). Although "district courts within the Fifth Circuit have often exercised personal jurisdiction over defendants whose websites enabled online purchases[,] a website that allows online sales is not, by itself, enough to create jurisdiction." *Huynh v. Zurno, Inc.*, 2019 WL 486993, at *5 (S.D. Tex. Jan. 18, 2019). "The plaintiff also must show actual contact with residents of the forum, not just the potential for sales in the forum." *Id.* (citing *Autoflex Leasing-Dallas I, LLC*, 2017 WL 713667, at * 5 (N.D. Tex. Feb. 23, 2017) (in order to create jurisdiction, interactive website must have produced actual sales in the forum, not the mere possibility of sales)); *Mink*, 190 F.3d at 337 ("Absent a defendant doing business over the internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate.").

---

[1] *See Bristol-Myers Squibb*, 137 S. Ct. at 1780-81 1780 ("In order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum.") (citing *Daimler*, 134 S. Ct. at 754); *see also Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115 (2014) (holding that a defendant's relationship with the forum state must arise out of contacts that the defendant himself creates).

"'Moreover, as the Supreme Court has made clear, the relationship required for specific personal jurisdiction must arise out of contacts that the defendant … creates within the forum State.'" *Getagadget, LLC*, 2019 WL 9654858 at *3 (quoting *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 594 (E.D. La. 2015)). Thus, "[a] transaction initiated by the plaintiff is insufficient to establish personal jurisdiction." *Id.* In *Getagadget, LLC*, for example, the court explained:

> Plaintiff alleges personal jurisdiction based on two sales within this District to Plaintiff's attorney. (citation omitted). Plaintiff fails to provide any other evidence supporting its claim that Defendant has actually, purposefully availed itself of the privileges of doing business in the State of Texas. Plaintiffs only evidence constitutes its own unilateral act of bringing Defendant's product into the forum. Without more, this evidence is insufficient to prove Defendant's "minimum contacts" with the forum. … Thus, Plaintiff failed to meet its burden and make a *prima facie* showing of personal jurisdiction.

2019 WL 9654858 at *3.

The same outcome is even more warranted here. Plaintiff has alleged nothing more than he came across Defendants' alleged websites while "browsing the internet." *See generally* FAC, ECF No. 23. Plaintiff has not alleged that he or his physician purchased the (prescription-only) Device from the websites or even that the websites allow for commercial transactions. *Id.* Plaintiff's allegation that he developed an interest in the Device after viewing Defendants' websites from his house in Texas simply does not constitute a *prima facie* case of specific jurisdiction.[2]

In sum, Plaintiff has not presented a *prima facie* case for general or specific personal jurisdiction, and the FAC should be dismissed.[3]

---

[2] *See, e.g., Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012) ("The unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

[3] The allegations in the FAC would, however, provide a basis of personal jurisdiction over Dr. Kansas. And although its immaterial to the issues before the Court, it bears noting that Plaintiff has filed this action against Dr. Elist, a California-based physician, from whom Plaintiff has never

**C.     Plaintiff has failed to state a claim for violation of the DTPA.**

Even if this Court enjoyed personal jurisdiction over Defendants, the FAC should be dismissed pursuant to Rule 12(b)(6) because Plaintiff has not stated a claim on which relief can be granted. Plaintiff's causes of action are premised on two alleged violations of the DTPA,[4] the first of which fails as a matter of fact and the second as a matter of law.

**1.  Legal standard.**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8 which requires "a short plain statement of the claim showing that the pleader is entitled to relief." *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011); *Fearrington v. Boston Scientific Corp.*, 410 F. Supp. 3d 794 (S.D. Tex. 2019); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when the factual content pleaded "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Though all well-pleaded facts are accepted as true, the court is not "bound to accept legal conclusions couched as factual allegations." *Kan*, 823 F. Supp. 2d at 469. When deciding a Rule 12(b)(6) motion to dismiss, the court may consider the complaint and

---

sought or received treatment while not pursuing any claims against Dr. Kansas, the Texas-based physician that consulted with Plaintiff regarding the Device, prescribed the Device, and performed the implantation procedure.

[4] Although Plaintiff nominally pleads three causes of action under the DTPA, as discussed below, (i) the alleged misrepresentation concerning the indicated use for which the FDA cleared the Device and (ii) Defendants alleged failure to disclose the risks associated with the Device are the only alleged predicates of liability.

matters subject to judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

> ### 2.   The FDA cleared the Device for cosmetic enhancement of healthy penises.

Plaintiff first claims that Defendants, via their alleged websites, misrepresented the Device to be an "FDA-cleared penile implant for cosmetic enhancement" when it was "FDA-cleared only 'for use in the cosmetic correction of soft tissue deformities.'" FAC, ECF No. 23, at 2, 15-16 (emphasis omitted). Plaintiff further claims that (i) Defendants "knew when they made these representations that [the Device] was not … FDA-cleared for enhancement of normal penises," *id.* at 18, and (ii) "had he known [the Device] was not … FDA-cleared for cosmetic enhancement of normal penises … he would not have purchased the Device and procedure." *Id.* at 21. This claim fails as a matter of fact, however, because the Device *was* FDA-cleared for cosmetic enhancement of healthy penises.

In 2022, IMD submitted to FDA a "Section 510(k) premarket notification of intent to market" its "Pre-Formed Silicone Block" (*i.e.*, the Device). Exhibit A, FDA's 510(k) Premarket Clearance Letter, at 1. On May 13, 2022, six days before Plaintiff consulted with Dr. Kansas and two months before he received the implant, FDA cleared the Device "for the indications for use stated" in the 510(k) premarket notification, to wit:

> **INDICATIONS FOR USE**
> The Pre-Formed Penile Silicone Block is intended for use in augmentation, reconstructive and cosmetic surgery, and is contoured at the surgeon's discretion to create a custom implant. When used in augmentation procedures, the device provides cosmetic augmentation of the penis and is intended for aesthetic purposes.

Exhibit A at 1 (FDA clearance letter), 3 (FDA Form 3881), 5 (510(k) Summary).[5]

---

[5] **Request for Judicial Notice**. Pursuant to Federal Rule of Evidence 201, Defendants request that judicial notice be taken of the following facts: (i) on May 13, 2022, FDA cleared the Device (*i.e.*, IMD's Pre-Formed Penile Silicone Block) as a (ii) prescription medical device (iii) "for the

Thus, the Device was FDA-cleared for the "cosmetic augmentation of the penis … for aesthetic purposes," and, as such, the first basis on which Plaintiff's DTPA claims rest fails as a matter of fact.

**3. Plaintiff has failed to allege facts sufficient to state a DTPA claim premised on an alleged failure to warn in the context of a prescription medical device and the learned intermediary doctrine.**

Plaintiff next claims that Defendants violated the DTPA because they failed to warn him of various risks associated with the Device including the alleged risks of: (i) scarring, FAC, ECF No. 23, at 8; (ii) loss of sensation, *id.*; (iii) deformity including "penile shortening and disabling curvature," *id.* at 10; (iv) sexual dysfunction, *id.*; and (v) other adverse consequences arising from Device removal, *id.* at 5-6, 10. This claim fails as a matter of law, however, because Defendants did not have duty to warn Plaintiff of these or any other alleged risks associated with the Device.

Texas courts have adopted the learned intermediary doctrine pursuant to which a prescription medical device manufacturer "'satisfies its duty to warn the end user of its product's potential risks by providing adequate warnings to a "learned intermediary" who then assumes the duty to pass on the necessary warnings to the end user.'" *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 774 (5th Cir. 2018) (quoting *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 142 (Tex. 2012)); *Fearrington*, 410 F. Supp. 3d at 801 ("Under the learned intermediary doctrine a medical device manufacturer satisfies its duty to warn by providing adequate warnings to the prescribing physician."). The learned intermediary doctrine applies to all

---

indications of use" set forth above. *See* Exhibit A at 1, 3, 5, available at https://www.accessdata.fda.gov/cdrh_docs/pdf22/K220760.pdf; *see also U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 756 nn. 9-11 (S.D. Tex. 2010) (taking judicial notice of publicly available FDA 510(k) Clearance notices for medical devices and the contents thereof including the indicated uses for which those devices were cleared); *Rhodes v. Covidien LP*, 2019 WL 2162845, at *3, nn. 30-31 (same) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

claims premised on an alleged failure to warn including those asserted under the DTPA. *See Centocor*, 372 S.W.3d at 168 (holding that learned intermediary doctrine applies to all claims premised on a failure to warn, including DTPA claims: "'If the [learned intermediary] doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such as a violation of the DTPA …, then the doctrine would be rendered meaningless'") (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 708 (E.D. Tex. 1997), *aff'd*, 165 F.3d 374 (5th Cir. 1999) (affirming trial court's application of learned intermediary doctrine to DTPA claims)); *Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 94 (Tex. App.—Texarkana 2000 (applying learning intermediary doctrine to DTPA claim premised on alleged failure to warn). Thus, to state a DTPA claim premised on an alleged failure to warn in the prescription medical device context:

> [A] plaintiff must plead facts such as the actual warnings given to the physician, that a different warning would have prevented [his] physician from prescribing the [device] or at least led to [the physician] giving [him] different information that would have caused [him] to refuse to consent.

*Fearrington*, 410 F. Supp. 3d at 801 (citing *Gonzalez v. Bayer Healthcare Pharmaceuticals, Inc.*, 930 F. Supp. 2d 808, 818 (S.D. Tex. 2013) (dismissing failure-to-warn claim where complaint did not: (i) identify the warnings provided to plaintiff's physician; (ii) allege that those warnings were inadequate; or (iii) allege that a different warning would have changed the doctor's actions)).

The FAC does not (i) identify the warnings IMD provided to Plaintiff's physician, Dr. Kansas, nor alleges (ii) that those warnings were inadequate or (iii) that different warnings would have altered Dr. Kansas prescription decision or led him to provide additional or different information to Plaintiff. *See generally* FAC, ECF No. 23. Plaintiff, therefore, fails to state a DTPA claim based on Defendants' alleged failure to warn of risks associated with the Device.

**CONCLUSION**

The Court does not have personal jurisdiction over IMD, Menova, Elist Medical, or Dr. Elist, and Plaintiff has not and cannot present a *prima facie* case showing otherwise. The Court should, therefore, grant this motion and dismiss this action without prejudice pursuant to Rule 12(b)(2). Moreover, because (i) judicially noticeable facts demonstrate that FDA cleared the Device for use as a cosmetic enhancement of healthy penises and (ii) Plaintiff fails to allege facts sufficient to show that his injuries were caused by Defendants' alleged failure to warn of risks associated with the Device, Plaintiff has failed to state a DTPA claim on which relief can be granted. Thus, should the Court determine that it has personal jurisdiction over any or all of the Defendants, it should dismiss the FAC pursuant to Rule 12(b)(6).

Respectfully Submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Randall L. Christian*

Randall L. Christian
Federal ID No. 15935
Texas Bar No. 00783826
randall.christian@bowmanandbrooke.com
Jonathan L. Smith
Federal ID No. 3632192
Texas Bar No. 24088436
jonathan.smith@bowmanandbrooke.com

2901 Via Fortuna Drive, Suite 500
Austin, Texas 78746
Tel: (512) 874-3800
Fax: (512) 874-3801

*Attorneys for International Medical Devices, Inc.; Menova International, Inc.; James J. Elist M.D., a Medical Corporation; and James Elist, M.D.*

11

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument and all attachments thereto was filed with the Clerk via the ECF system which will give notice of the filing to Plaintiff, who has registered as an ECF user. I further certify that Plaintiff was also served with the foregoing instrument and all attachments thereto on February 6, 2025, by email addressed to: middlemanadvert@gmail.com.


/s/ Jonathan L. Smith
Jonathan L. Smith