**Jose M. Gonzalez, Pro Se**
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

UNITED STATES DISTRICT COURT

**WESTERN DISTRICT TEXAS**

**AUSTIN DIVISION**

JOSE M. GONZALEZ,

       Plaintiff,

vs.

INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST M. D., A MEDICAL CORPORATION, AND DR. JAMES ELIST,

       Defendants.

Case No.**:**    **1:24-cv-00982-DII**

**PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

The Defendants, International Medical Devices, Inc. ("IMD"), Menova International, Inc. ("Menova"), James J. Elist M.D., a Medical Corporation ("Elist Medical"), and Dr. James Elist ("Defendants") seek dismissal[1] of the Plaintiff, Jose M. Gonzalez's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), claiming (1) lack of personal jurisdiction and (2) failure to state a claim. However, Defendants' motion should be denied because the Plaintiff can adequately allege facts establishing a prima facie case for

---

[1] The Plaintiff submits that a (21 days) Request for Extension of Time to respond to the Defendant's Motion for Dismissal was filed on February 7, 2025. [dkt#25]. This was based on the Defendant's having presented evidence to the Court that Plaintiff asserts is misleading [Dkt# 24-1] and thus, the need for clarification by the Food and Drug Administration. Admittedly, the Court did not rule to Grant or Deny the Plaintiff's motion. However, the Defendant's filed no objection to the requested Motion for Extension of Time and ostensibly, can find no prejudice.

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 1

personal jurisdiction over the Defendants and can sufficiently state a claim under the Texas Deceptive Trade Practices Act ("DTPA").

To prove it, the Plaintiff illustrates the following:

**I.   This Court has personal jurisdiction over Defendants due to their direct business operations in Texas, including their personally trained network of physicians.**

When accepted as true, the jurisdictional facts alleged in the FAC certainly establish a *prima facie* case for personal jurisdiction over all the Defendants. As argued in the FAC, the defendants enjoy systematic and purposeful contacts with Texas. [dkt# 23; p.4-6]. Even though the Defendants argue that their only connection to Texas is that the Plaintiff saw *online* advertisements for the Penuma [dkt# 24; p.1-2], which they claim is insufficient to establish jurisdiction, the evidence contradicts this claim:

A. In a publicly available *online* video[2], Defendant Dr. Elist states that on or about August 2021, he actively trained and controlled a network of physicians, including in Texas. Grand Rounds, where he spoke, is a professional medical forum where physicians discuss emerging treatments and technologies. His participation suggests he was promoting Penuma as a viable procedure to urologists and surgeons. [See attached; Grand Rounds Transcript, dkt# 26-1; p.4-5].

B. Here, in his own words, Dr. Elist confirmed that he maintains a network of trained providers, including in Texas, stating, "*At the present time, I have 10 other physicians in the United States from different universities that joined me and do this procedure...*

---

[2]   A full copy of the transcript, including specific quotes and pagination, as well as the URL (https://grandroundsinurology.com/the-history-of-penile-enlargement-and-the-advent-of-penuma/ ), are be provided herein.

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 2

*We have colleagues in Boston, New York, Washington, Seattle, Texas, Florida.*" [dkt# 26-1; p.4-5].

C. Specifically, Dr. Elist publicly identifies a Texas-based doctor, Dr. Kansas, as part of the Penuma provider network. [dkt# 26-1; p.19].

D. As stated in the FAC, Dr. Kansas is a board-certified urologist in the State of Texas who has performed over 200 Penuma procedures within the State of Texas at his residency Urology Austin. [dkt#23; p.6].

## Argument

Under *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,* 141 S. Ct. 1017 (2021), companies can be sued in a state where they systematically market, sell, or support a product, even if they are headquartered elsewhere. Aside from Dr. Elist's direct involvement in training and networking making his ties to Texas significant, his product is also manufactured and shipped into Texas by prescription order. This establishes "*purposeful availment*"—meaning he has deliberately conducted business in Texas, making jurisdiction valid.

Furthermore, this is true even if the injury did not arise from a specific transaction in the state. As guidance by the Court in *Ford Motor Co.* illustrates: "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." [*Ford Motor Co.,* 141 S. Ct. at 1026].

Moreover, the Texas Supreme Court has similarly held that a defendant may be subject to jurisdiction when its products are sold and cause injury within Texas, even if the defendant did not directly target Texas consumers. [*LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 351 (Tex. 2023)]. Just as in *LG Chem*, where jurisdiction was proper despite an indirect distribution

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 3

network, the Defendants here have systematically marketed, distributed, and facilitated the sale of Penuma in Texas through trained physicians.

The "*nature and quality of commercial activity that an entity conducts over the Internet*" [*Getagadget, LLC v. Jet Creations Inc*., 2019 WL 9654858, at * 2 (W.D. Tex. Sept. 30, 2019) (citing *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999)] can readily be gleaned from Dr. Elist' own admission that Dr. Kansas is an officially recognized Penuma provider. This confirms that the Defendants purposefully directed business into Texas through a trained network of physicians, including Dr. Kansas. [*"Now, as I said, it was offered in more than 10 clinics... I have Dr. Kansas, I have Dr. Shaw, I have Dr. Geiler, and I have Dr. Taj, and I have Dr. Fossil also."* Grand Rounds Transcript dkt# 26-1; p.19].

## II. PLAINTIFF'S CLAIMS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA), FRAUD, AND FAILURE TO WARN ARE LEGALLY VIABLE AND SUPPORTED BY SUBSTANTIAL EVIDENCE.

As stated in a well pleaded FAC, the Defendants' marketing of the Penuma implant was materially false and misleading. [dkt# 23; p.20]. Ironically, counsel for the Defendants seek to further this obfuscation by presenting, without context, their Exhibit A, which is a <u>single</u> FDA 510(k) Premarket Clearance Letter [dkt#24-1]; ostensibly to confuse this Court into believing that each model, including the one implanted in the Plaintiff, "*was FDA-cleared for cosmetic enhancement of healthy penises.*" (emphasis included in the original) [dkt# 24; p.8]. Even going so far as to footnote a **Request for Judicial Notice** under this misleading premise. When if fact:

A. Dr. Elist has developed and brought to market multiple iterations of the Penuma device, with each version undergoing the FDA's 510(k) clearance process. [FDA 510k Progeny; dkt#26-2]. Following the same regulatory pathway, Himplant is

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 4

simply a newer version of the Penuma. However, despite these iterations, only one version has ever received FDA clearance specifically for augmentation, while the others were cleared solely for treating soft tissue deformities, not cosmetic enhancement.

B. For clarity and brevity, below is a layout illustrating the progeny of the devices. *

| Device Model | 510K Clearance | Indications for Use |
| --- | --- | --- |
| **PMA-K042380** dkt#26-2; pages 2-4 | October 25, 2004 | The Silicone Block is intended for use in the cosmetic correction of soft tissue deformities, and is contoured at the surgeon's discretion to create a custom implant to aid in the reconstruction process. |
| **PMA-K162624** dkt#26-2; pages 5-10 | February 1, 2017 | The Pre-Formed Penile Silicone Block is intended for use in the cosmetic correction of soft tissue deformities, and is contoured at the surgeon's discretion to create a custom implant. |
| **PMA-K181387** dkt#26-2; pages 11-15 | January 23, 2019 | The Pre-Formed Penile Silicone Block is intended for use in the cosmetic correction of soft tissue deformities, and is contoured at the surgeon's discretion to create a custom implant |
| PMC-K220760 dkt#26-2; pages 16-21 | May 13, 2022 | The Pre-Formed Penile Silicone Block is intended for use in augmentation, reconstructive and cosmetic surgery, and is contoured at the surgeon's discretion to create a custom implant. When used in augmentation procedures, the device provides cosmetic augmentation of the penis and is intended for aesthetic purposes. |
| PMC-K223051 dkt#26-2; pages 22-28 | February 3, 2023 | The Pre-Formed Penile Silicone Block is intended for use in the cosmetic correction of soft tissue deformities, and is contoured at the surgeon's discretion to create a custom implant to aid in the reconstruction process. |

**\* For a complete overview see attached FDA 510(k) clearance by Device [dkt#26-2].**

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 5

C. Elist own words in the Ground Rounds Transcript [dkt# 26-1] confirms that he explicitly promoted the Penuma as "FDA-approved," saying, "*We got the first FDA approval in 2004, the second in 2016, and the third in 2019... Now we are approved for penile enhancement*" [dkt# 26-1; p.17], despite this being demonstrably false.

D. Attached correspondence from the FDA illustrates that the regulatory body has not cleared or approved <u>predicate or subsequent</u> models of the Penuma for augmentation. [dkt#26-3; p.1]. Specifically, when questioned by a consultant agency hired by the Plaintiff to research this topic[3], the FDA states that in a scenario where:

"*Model A-1 is approved by the FDA for its intended purpose which does not extend to augmentations. Later the manufacturer gets Model A-2 approved for its intended purpose as well. In fact, the FDA determines the Model A-2 is substantially similar to the predicate Model A-1. However, this time, the FDA also clears Model A-2 for augmentation. Does this now mean that Model A-1 is now cleared for augmentations as well?*" [FDA Question; dkt#26-3; p.1].

The Food and Drug Administration's response was:

"*…to provide further clarification, Model A-1 is not cleared for augmentation if that wasn't in the application as an indication for use.*" [FDA Answer; dkt#26-3; p.2].

## **Argument**

Given the evidence presented in the FAC and herein, the Defendants' marketing of predicate Penuma models as being cleared for augmentation is false and misleading, as no such

---

[3] Plaintiff requests that this Court take **Judicial Notice of the relevant FDA communications** offered under **FRE 803(6)** business records, including the response to an inquiry regarding whether subsequent clearance of a model (Model A-2) for augmentation automatically extends to the predicate model (Model A-1). The FDA clarified that Model A-1 remains cleared only for its original intended use unless the application specifically includes augmentation as an indication for use. See 21 CFR 807.81 and 807.92, which establish that a new model's clearance for expanded indications does not retroactively extend to the predicate model unless specifically addressed. Plaintiff further requests that the Court take notice of the FDA's official guidance on 510(k) submissions available on the FDA website. [https://www.fda.gov/medical-devices/premarket-submissions-selecting-and-preparing-correct-submission/premarket-notification-510k ].

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 6

approval existed until 2022 [dkt#26-2; p.18]. Incredibly, Dr. Elist' own statements during this Grand Rounds conference that his product was **approved** is patently false and Federal regulation proves it.

### Misrepresentation of FDA Clearance (21 CFR § 807.39)

Defendants have repeatedly misrepresented the FDA clearance status of the Penuma implant to both physicians and patients. Under 21 CFR § 807.39, manufacturers are prohibited from falsely implying that a medical device is "FDA-approved" if it has only received 510(k) clearance. Accordingly, such misrepresentations constitute misbranding under the Federal Food, Drug, and Cosmetic Act (FDCA), which directly impacts the legitimacy of the learned intermediary defense and supports Plaintiff's claims under consumer protection laws.

### Unapproved Distribution of a Medical Device (21 U.S.C. § 331(a))

The FDA has explicitly stated that only one version of the Penuma implant was cleared, yet Defendants distributed and marketed multiple versions to physicians without full regulatory approval. Under 21 U.S.C. § 331(a), distributing an unapproved medical device is a prohibited act. This further supports Plaintiff's claim that the device implanted in him was not legally marketed and that Defendants failed to disclose critical safety differences between the versions.

### Failure to Provide Adequate Disclosures to Physicians (21 CFR § 812.5)

Defendants failed to adequately inform Dr. Kansas and other trained providers of material risks associated with Penuma, particularly regarding the varying FDA clearance statuses of different models. Under 21 CFR § 812.5, sponsors of medical devices are required to ensure that investigators (physicians) receive sufficient information to evaluate risks properly. This too

serves to undermine the learned intermediary defense and supports Plaintiff's failure-to-warn claims.

### III. THE "LEARNED INTERMEDIARY" DEFENSE IS INAPPLICABLE BECAUSE DEFENDANTS FAILED TO ADEQUATELY WARN DR. KANSAS OF THE RISKS, INCLUDING THE FACT THAT ONLY ONE OUT OF MULTIPLE VERSIONS OF THE IMPLANT WAS FDA-CLEARED.

As evidenced by Dr. Elist's statements in the Grand Rounds Transcript, at the time of Dr. Kansas' training to become part of the Penuma Network, only one of two conclusions are inescapable:

(a) Dr. Elist knowingly conspired to have the Penuma device implanted in patients for augmentation purposes, despite the FDA's August 2021 indications for use being limited solely to the treatment of soft-tissue deformities, thereby engaging in an unlawful promotion of a medical device for unapproved use; or

(b) Dr. Elist failed to properly train or advise Dr. Kansas regarding the legal and regulatory limitations surrounding the device, thereby rendering any such training incomplete, misleading, or insufficient to ensure compliance with FDA regulations and informed consent standards.

A. The Defendants have eagerly recognized Dr. Kansas as an official Penuma provider.[4]

["*Now, as I said, it was offered in more than 10 clinics... I have Dr. Kansas, I have*

---

[4] The Defendants have not engaged in any meaningful exchange of information even though the Plaintiff has been transparent and forthcoming. In fact, the Defendants have refused to operate in good faith on even the simplest requests such as written interrogatories to Dr. Kansas, counter to the FRCP and the WDTX Local Rules.

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 8

*Dr. Shaw, I have Dr. Geiler, and I have Dr. Taj, and I have Dr. Fossil also*." [Grand Rounds Transcript dkt# 26-1; p.19].

B.  An attached letter from Dr. Kansas illustrates that he reasonably believed, based on information and training from the Defendants, that all Penuma models were indicated for use in augmentation and in fact, interchangeable. [See attached; Kansas Letter; "*Unfortunately, you developed a complication of the implant, not the surgery. The newer version of the implant, in my opinion, makes these problems far less likely. My care was appropriate and not the cause of the retraction of the implant*." [Kansas Letter; November 11, 2023; dkt# 26-4; p.2].

C.  Attached emails from Dr. Kansas memorializes his concern with what he witnessed while part of the Penuma Network. "*I stopped doing penuma. I did well over 200 but the 3-5% that had imperfect results drove me to no longer want to do them.*" [Kansas Email, August 8, 2023; dkt#26-5; p.2].

D.  To further illustrate the Defendant's control over the Penuma supply chain into Texas, in Dr. Kansas Letter to the Plaintiff he states that: "…*I no longer have access to implants. So I would not b able to do either of those options for u at this point since I'm out of penuma, they will no longer ship implants to me.*" [Kansas Email, August 8, 2023; dkt#26-5; p.2].

## Argument

The Texas Supreme Court in *Centocor, Inc. v. Hamilton* reaffirmed the applicability of the learned intermediary doctrine, stating that a prescription drug manufacturer fulfills its duty to warn end users of its product's risks by providing adequate warnings to the prescribing physician. However, if the manufacturer fails to adequately inform the intermediary, the defense

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 9

may not apply. This case underscores the argument that Defendants' failure to properly warn Dr. Kansas undermines their reliance on the learned intermediary doctrine.

Again, the "learned intermediary" defense is inapplicable because Defendants failed to adequately warn Dr. Kansas of the risks, including the fact that only one out of multiple versions of the implant was FDA-cleared. Additionally, unless Dr. Elist conspired to engage in the off-shelf promotion of his product (which is certainly feasible given the evidence), Dr. Elist would not have had a conversation with Dr. Kansas about a procedure involving his device, that his device was not cleared for. Making this a case of *res ipsa loquitur*.

## CONCLUSION

A. The Defendants' marketing of the Penuma implant was materially false and misleading, as the specific implant Plaintiff received was not FDA-cleared, contrary to Defendants' representations.

B. The "*learned intermediary*" defense is inapplicable because Defendants failed to adequately warn Dr. Kansas of the risks, including the fact that only <u>one</u> out of multiple versions of the implant was FDA-cleared.

C. Plaintiff's claims under the Texas Deceptive Trade Practices Act (DTPA), fraud, and failure to warn are legally viable and supported by substantial evidence.

D. Attached evidence from Dr. Kansas and the FDA confirm that Dr. Kansas was not properly informed of the risks and ultimately ceased performing Penuma implants due to high failure rates.

E. Dr. Elist's own statements in a publicly available transcript confirm that he actively trained and controlled a network of physicians, including in Texas, and falsely represented the FDA clearance of Penuma.

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 10

F. Defendants' actions may constitute violations of federal regulations governing medical devices, particularly under Title 21 of the Code of Federal Regulations (CFR), further underscoring the deceptive nature of their conduct.

The FAC details Defendants' purposeful availment of the Texas market, including their marketing, distribution, and sale of the prescription penile implant within the state, as well as direct interactions with Texas consumers and healthcare providers. These contacts satisfy the minimum contacts test under due process principles, demonstrating that Defendants could reasonably anticipate being hauled into a Texas court.

Moreover, Plaintiff has set forth specific factual allegations showing that Defendants engaged in deceptive trade practices, including misrepresentations and omissions regarding the safety, risks, and efficacy of the implant, which directly led to his bodily injury and economic losses.

Therefore, dismissal at this stage would be woefully inappropriate.

Respectfully Submitted,

/s/ _____

Jose M. Gonzalez, pro se litigant

1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 11

## CERTIFICATE OF SERVICE

I, Jose M. Gonzalez, Plaintiff pro se, do hereby certify that on the 27th Day of February 2025, a true and correct copy of the foregoing: PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS and all attachments thereto were filed with the Clerk using the ECF system which will give notice of the filing to all counsel of record.

/s/   Jose M. Gonzalez, Pro Se

DATE: 02/27/2025

1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS - 12