UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE M. GONZALEZ, | § | No. 1:24-cv-982-DAE |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| INTERNATIONAL MEDICAL | § | |
| DEVICES, INC., ET AL., | § | |
| *Defendants*. | § | |

<u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS</u>

Before the Court is Defendants International Medical Devices, Inc.
("IMD"), Menova International, Inc. ("Menova"), James J. Elist M.D., a Medical
Corporation ("Elist Medical"), and James Elist, M.D.'s ("Dr. Elist") (collectively,
"Defendants") Motion to Dismiss pursuant to Rule 12(b)(2) and (6), filed on
February 6, 2025.  (Dkt. # 24.)

On February 27, 2025, pro se Plaintiff Jose Gonzalez ("Plaintiff")
filed his Response in opposition to the motion, labeled as "Plaintiff's Motion to
Deny Defendant's Motion to Dismiss."  (Dkt. # 26.)  On March 10, 2025,
Defendants filed their Reply.  (Dkt. # 27.)  On March 13, 2025, Plaintiff filed
another "Motion to Deny Defendant's Motion to Dismiss" (Dkt. # 28), which the
Court construes as a sur-reply filed without leave from the Court.  After careful
consideration of the memoranda and exhibits in support and in opposition to the

motion, the Court, for the reasons that follow, **DENIES** Defendants' Motion to Dismiss under Rule 12(b)(2).

BACKGROUND

This lawsuit revolves around complications arising from Plaintiff's July 26, 2022 prescription penile implant surgery.  Plaintiff alleges Defendants have jointly developed and marketed the "Penuma" device, a silicone penile implant, as a penis enlargement device ("Device").  (Dkt. # 23 at 1.)  Dr. James J. Elist ("Dr. Elist") has also developed a surgical procedure for implanting the Device.  (Id.)  Elist Medical is a medical corporation, and Plaintiff alleges Dr. Elist markets the Device and offers surgical services to implant the Device from his Elist Medical clinic in Beverly Hills, California.  (Id. at 8.)

In 2002, Dr. Elist received a patent on the Device that was later named "Penuma."  (Id.)  Beginning in 2004, Dr. Elist created National Medical Devices, Inc. ("NMD")—the predecessor of Defendant IMD—to manufacture the device and serve as its exclusive distributor.  (Id.)  In 2013, Dr. Elist renamed NMD to "International Medical Devices, Inc."  (Id. at 9.)  Dr. Elist subsequently created the company Menova to hold the intellectual property associated with his silicone penile implant device.  (Id.)  Menova holds the trademark registration for the "Penuma" mark with the United States Patent and Trademark Office ("USPTO").  (Id.)  Dr. Elist is the president of Menova and owns 100% of Menova.  (Id.)

Plaintiff argues Defendants falsely and misleadingly tout the device and procedure as "FDA-cleared," giving reasonable consumers the false impression that the U.S. Food and Drug Administration ("FDA") has determined that the Penuma Device is safe and effective for cosmetic penis enlargement procedures in men with healthy, normal bodies.  (Id. at 2.)  However, Plaintiff claims that the Penuma Device is not safe and effective—nor is it FDA-cleared—for cosmetic penile enlargement, but rather is FDA cleared only "for use in the cosmetic correction of soft tissue deformities."  (Id.)

On May 19, 2022, Plaintiff met with a board-certified urologist with Urology Austin, PLLC named Dr. Bryan Kansas.  (Id. at 6.)  According to Plaintiff, Dr. Kansas was personally trained to perform the penile implant surgery by Dr. Elist.  (Id. at 9.)  On July 26, 2022, after listening to Dr. Kansas, the Penuma website, and Dr. Elist's website tout the thousands of positive outcomes, Plaintiff underwent implantation of the Penuma Device.  (Id. at 6.)  However, Plaintiff does not include Dr. Kansas as a defendant in this lawsuit.   After the procedure, Plaintiff complained of discomfort in the groin area and noted deformities in the position of the implant.  (Id.)  In addition, Plaintiff alleges he suffered complications from the surgery, including abdominal pain, sharp groin pain, and capsule (scarring).  (Id. at 7.)

After Plaintiff's continued pain and discomfort in the groin area for over a year, Dr. Kansas allegedly opined that the older model of the Penuma Device was defective and that a newer version, released in April 2023, would correct Plaintiff's issues.  (Id.)  Plaintiff alleges the newer model, branded the "Himplant," was designed to correct these known flaws by the Defendants' previous failed product.  (Id.)  Further, Plaintiff alleges Dr. Kansas no longer practices in this field as a result of his patients' dissatisfaction with the Penuma implant.  (Id. at 8.)  Thus, Plaintiff alleges he will need to have a new reconstructive urological surgeon remove the Penuma Device as a result of the complications of his implant surgery.  (Id. at 7.)

On August 22, 2024, Plaintiff filed the instant lawsuit against Defendants, alleging three counts of violations of the Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 et seq. ("DTPA").  (Dkt. # 1.)  On January 24, 2025, Plaintiff filed his Amended Complaint.  (Dkt. # 23.)  On February 6, 2025, Defendants filed the instant motion to dismiss.  The motion is ripe for consideration.

## LEGAL STANDARD

I.     Rule 12(b)(2)

When a nonresident defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a court

must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process." Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). "The Texas long-arm statute extends to the limits of the Constitution," and a Texas court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008). "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state. Such contacts can give rise to general or specific jurisdiction." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant. Stroman, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction). If a

defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contacts with the forum.'" Id. (quoting Helicopteros, 466 U.S. at 415).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction. Nuovo Pignone, SpA v. Storman Asian M/V, 310 F.3d 374, 378 (5th Cir. 2002); Elly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). If a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction. Id.

II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial

6

notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts

'all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)

(quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464,

467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for

relief, however, a plaintiff must do more than recite the formulaic elements of a

cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions,"

and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).

Thus, although all reasonable inferences will be resolved in favor of the plaintiff,

the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman

v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.")

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).

Courts must construe the pleadings of pro se litigants liberally. Andrade v. Gonzales, 459 F.3d 538, 543 (5th Cir. 2006).  However, "such a liberal construction does not require that the Court or a defendant create causes of action where there are none."  Smith v. CVS Caremark Corp., 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).  Even with pro se litigants, "conclusory allegations or legal conclusions masquerading as factual conclusions," are not sufficient for a well-pleaded complaint.  Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (quoting S. Christian Leadership Conference v. Supreme Court of State of La., 252 F.3d 781, 786 (5th Cir. 2001)).

<u>DISCUSSION</u>

Defendants move to dismiss on the grounds that Plaintiff has neither alleged nor can he otherwise present facts sufficient to establish a prima facie case of personal jurisdiction over any of the Defendants, and even if he could, he fails to state a DTPA claim on which relief can be granted.  (Dkt. # 24 at 1.)  Plaintiff

responds that this Court has personal jurisdiction over Defendants because they purposefully directed activities toward Texas and that he has sufficiently stated DTPA claims against Defendants.  (Dkt. # 26 at 2.)  Plaintiff further contends his "DTPA, fraud, and failure to warn claims are legally viable and supported by substantial evidence."  (Id. at 4.)

I.    Personal Jurisdiction

First, Defendants argue Plaintiff fails to establish this Court has either general or specific jurisdiction over each Defendant.  (Dkt. # 24 at 4–5.)  The allegations provide that Dr. Elist resides in California and Defendants IMD, Menova, and Elist Medical are California corporations that maintain their respective principal places of business in California.  (Dkt. # 23 at 3.)  Thus, Defendants correctly assert that none can be deemed "at home" in Texas for purposes of general jurisdiction.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (stating that it is "incredibly difficult" to establish general jurisdiction in forum other than the place of incorporation or principal place of business).  There is also no indication that Defendants have "affiliations with [Texas]" that "are so 'continuous and systematic' as to render them essentially at home in [Texas.]"  Frank v. P N K (Lake Charles) L.L.C., 947 F.3d 331, 336 (5th Cir. 2020) (quoting Goodyear, 564 U.S. at 919).  Indeed,

Plaintiff does not attempt to establish that any of the Defendants were essentially at home in Texas.

Defendants then argue that this Court may not exercise specific personal jurisdiction because Defendants' only alleged contact with Texas was advertising the Device on two websites that Plaintiff claims to have seen "[w]hile browsing the Internet [from] his home in Webb County, Texas." (Dkt. # 24 at 5.) Thus, Defendants claim Plaintiff's allegation that he developed an interest in the Penuma Device after viewing Defendants' websites from his house in Texas simply does not constitute a prima facie case of specific jurisdiction. (Id. at 6.)

Plaintiff contends Defendants purposefully directed activities toward Texas by and through (1) Dr. Elist's direct involvement in training and networking with Texas-based doctors to perform the Penuma procedure; (2) Defendants have systematically marketed, distributed, and facilitated the sale of Penuma in Texas through trained physicians; and (3) Dr. Elist publicly identifies a Texas-based doctor, Dr. Kansas, as part of the Penuma provider network. (Dkt. # 26 at 2–3.) In support of his response, Plaintiff includes evidence containing an alleged transcript from Dr. Elist stating these facts in February 2022 at a "Advances in Men's Health Conference." (Dkt. # 26-1.) Defendants object to the unauthenticated transcript as inadmissible evidence, but even if considered, it does not establish a prima facie case for personal jurisdiction over any Defendant. (Dkt. # 27 at 1.)

In considering motion to dismiss complaint for lack of personal jurisdiction, a court may resolve jurisdictional facts by looking to affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985). Plaintiff proffers the transcript to support the proposition that Dr. Kansas, Plaintiff's Texas based physician, is among the physicians Dr. Elist trained to perform the implantation procedure, which is also a factual allegation contained in the Amended Complaint.  Therefore, the Court overrules Defendants' objection to the inclusion of the transcript testimony at this time.

To establish specific jurisdiction, Plaintiff must first demonstrate Defendant has purposeful minimum contacts with Texas.  Admar Int'l, Inc. v. Eastrock, L.L.C., 18 F.4th 783, 786 (5th Cir. 2021).  The defendant must target the forum state by purposefully availing itself of the opportunity to do business in that state.  Id. at 787.  The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Burger King, 471 U.S. at 475.

When website activity forms the alleged basis for personal jurisdiction, the Fifth Circuit employs the "sliding scale" approach from Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). See Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. 1999).  As

articulated in <u>Mink</u>, <u>Zippo</u> categorizes Internet use into a spectrum of three areas. At one end of the spectrum, personal jurisdiction is proper "where a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet.'" <u>Mink</u>, 190 F.3d at 336 (quoting <u>Zippo</u>, 952 F. Supp. at 1124). At the other end, a court lacks personal jurisdiction "where a defendant merely establishes a passive website that does nothing more than advertise on the Internet." <u>Id.</u> In the middle of the spectrum, "there are situations where a defendant has a website that allows a user to exchange information with a host computer," and courts should analyze the level of interactivity and commercial nature of that exchange to determine the appropriateness of jurisdiction. <u>Id.</u>

The Court agrees that Plaintiff's allegations regarding Defendants' website(s) fall on the passive end of the <u>Zippo</u> spectrum because the allegations only detail that the websites were used or seen for advertisement purposes. Although, the Court notes that Dr. Elist's website includes a section labeled "Areas We Serve", which specifically list Dallas/Forth Worth, Texas and Houston, Texas. (<u>See</u> Dkt. # 23 at 33.)

Nonetheless, the Court finds that Plaintiff's jurisdictional allegations involve more than mere website presence in this forum. In the Amended

Complaint, Plaintiff makes the following allegations regarding Defendants'
contacts with Texas:

- The [D]efendant's medical device was shipped across state lines from California into Travis County, Texas, where it was implanted in the plaintiff; (Dkt. # 23 at 4)
- Dr. Elist personally trains all urologists authorized to implant the Penuma (including Texas-based Dr. Kansas); (id. at 9.)
- [Dr. Elist] has also marketed and licensed his Penuma implantation procedures to 12 doctors nationwide, including Dr. Todd [*sic*] Kansas in Austin, Texas, who all perform the surgery in substantially the same manner, using the product and procedure developed by Dr. Elist; (id. at 11.)

"In cases involving a product sold or manufactured by a foreign

defendant," the Fifth Circuit has adopted a "'stream-of-commerce approach to

personal jurisdiction, under which the minimum contacts requirement is met so

long as the court finds that the defendant delivered the product into the stream of

commerce with the expectation that it would be purchased or used by consumers in

the foreign state." Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 177 (5th Cir.

2013) (internal quotations and citations omitted). The stream-of-commerce theory

of jurisdiction "recognizes that a defendant may purposely avail itself of the

protection of a state's laws—and thereby will subject itself to personal

jurisdiction—'by sending its goods rather than its agents' into the forum." In re

DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig., 888 F.3d 753,

778 (5th Cir. 2018) (quoting J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873,

882 (2011)).  Under this stream-of-commerce approach, "mere foreseeability or

awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." Ainsworth, 716 F.3d at 177 (quotation omitted) (alteration in original). To support personal jurisdiction, "the defendant's contacts must be more than random, fortuitous, or attenuated, or [based on] the unilateral activity of another party or third person." Id. (quotation omitted).

Accepting Plaintiff's allegations as true, the Court finds Plaintiff has sufficiently alleged Defendants purposefully availed themselves of the opportunity to do business with Dr. Kansas in Texas, who in turn performed the penile implant surgery on Plaintiff. As alleged, the Penuma Device is only shipped to and used by "12 urologists" who (1) contract with IMD and Menova and (2) are personally trained by Dr. Elist. (Id. at 9, 11.) Further, the Penuma Device was marketed and licensed on a limited and deliberate basis to Dr. Kansas in Texas by Defendants. (Id. at 11.) Accordingly, Plaintiff has demonstrated that Defendants have sufficient minimum contacts with Texas to confer specific jurisdiction. Therefore, the Court **DENIES** Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction.

II.    Motion to Dismiss DTPA Claims

To state a valid claim under the DTPA, a plaintiff must satisfy three elements: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of

the consumer's damages. <u>Jaramillo v. Liberty Mut. Ins. Co.</u>, No. 4:18-CV-338-Y,

2019 WL 8223608, at *6 (N.D. Tex. Apr. 29, 2019) (citing <u>Hugh Symons Grp. Plc.</u>

<u>v. Motorola, Inc.</u>, 292 F.3d 466, 468 (5th Cir. 2002)).

   Defendants move to dismiss the DTPA claims and notes that although

Plaintiff nominally pleads three causes of action under the DTPA, "(i) the alleged

misrepresentation concerning the indicated use for which the FDA cleared the

Device and (ii) Defendants alleged failure to disclose the risks associated with the

Device are the only alleged predicates of liability." (Dkt. # 24 at 7.) The Court

agrees and addresses each argument in turn.

   A. <u>Misrepresentation Claim</u>

   Plaintiff alleges that Defendants, via their websites, misrepresented

the Penuma Device to be an "FDA-cleared penile implant for cosmetic

enhancement" when it was "FDA-cleared only 'for use in the cosmetic correction

of soft tissue deformities.'" (Dkt. # 23 at 2, 15-16.) Defendants contend this claim

fails as a matter of fact, however, because the Penuma Device was FDA-cleared for

cosmetic enhancement of healthy penises. (Dkt. # 24 at 8.) In support of this

argument, Defendants provide an FDA 510(k) Premarket Clearance Letter, dated

May 13, 2022. (Dkt. # 24-1.) However, Plaintiff responds that Dr. Elist has

developed and brought to market multiple iterations of the Penuma Device, with

each version undergoing the FDA's 510(k) clearance process and each having different indications for use.  (Dkt. # 26 at 4–5.)

In the Amended Complaint, Plaintiff alleges that FDA's 510(k) clearance, dated January 23, 2019, identified the "Indications for Use," as limited to "use in the cosmetic correction of soft tissue deformities."  (Dkt. # 23 at 16.) And according to Plaintiff's allegations, nothing on the Defendants' website disclosed that Penuma is FDA-cleared only for use in the cosmetic correction of soft tissue deformities.  (<u>Id.</u> at 17.)

The Court finds that there appears to be a factual dispute as to which iteration of the Penuma implant device Plaintiff received in his 2022 surgery.  (<u>See</u> Dkt. # 27 at 2) (Defendants arguing that "Plaintiff is wrong" about which model he received).  The Court does not resolve any disputed fact issues on a motion to dismiss.  <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).  Thus, taking Plaintiffs well-pleaded facts as true, the Court finds Plaintiff has sufficiently alleged that Defendants misrepresented whether the Penuma Device implanted in him was FDA approved for the purpose of cosmetic enhancement of healthy penises as he so believed.

Therefore, the Court concludes Plaintiff has stated a valid DTPA misrepresentation claim to survive dismissal.

B.    <u>Failure to Disclose/Warn Claim</u>

"To state a DTPA claim on failure to disclose theory, the plaintiff must show (1) a failure to disclose, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed."  <u>Hudspeth v. Enter. Life Ins. Co.</u>, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  Further, as with other fraud-based DTPA claims, a claim for failure to disclose is subject to Rule 9(b)'s heightened pleading requirements.  <u>Llort v. BMW of N. Am., LLC</u>, No. 1:20-CV-94-LY, 2020 WL 2928472, at *6 (W.D. Tex. June 2, 2020).

Plaintiff claims that Defendants violated the "Texas Consumer Protection Act" (codified under the DTPA) because they failed to warn him of various risks associated with the Penuma Device.  (Dkt. # 23 at 21); <u>see</u> Tex. Bus. & Com. Code § 17.46(b)(23) ("[T]he failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed").

Defendants argue Plaintiff has failed to allege facts sufficient to state a DTPA claim premised on an alleged failure to warn in the context of a prescription

medical device and the learned intermediary doctrine.  (Dkt. # 24 at 9.)
Specifically, Defendants contend this claim fails as a matter of law because
Defendants did not have duty to warn Plaintiff of these or any other alleged risks
associated with the Device under the learned intermediary doctrine.  (Id.)

Plaintiff responds that the "learned intermediary" defense is
inapplicable because Defendants failed to adequately warn Dr. Kansas of the risks,
including the fact that only one out of multiple versions of the implant was FDA-
cleared.  (Dkt. # 26 at 8.)

Texas applies the "learned intermediary doctrine" to failure to warn
claims involving medical products.  DePuy Orthopaedics, 888 F.3d at 774;
Ackermann v. Wyeth Pharms., 526 F.3d 203, 207 (5th Cir. 2008).  Under this
doctrine, a manufacturer is excused "from warning each patient who receives the
product when the manufacturer properly warns the prescribing physician of the
product's dangers." Ackermann, 526 F.3d at 207 (citing Porterfield v. Ethicon, Inc.,
183 F.3d 464, 467-68 (5th Cir. 1999)).

To recover for failure to warn under the learned intermediary doctrine,
"a plaintiff must show that (1) the warning was defective, and (2) the failure to
warn was a producing cause of the injury."  Id. at 208 (citing Porterfield, 183 F.3d
at 468).  To survive a motion to dismiss, a plaintiff must "plead facts that would
show her doctors were inadequately warned and but for those inadequacies her

doctors would have recommended different treatment or given Plaintiff counsel that would have led her to withhold consent." Dubay v. Bos. Sci. Corp., No. 3:20-cv-01374-N, 2021 WL 3771769, at *1 (N.D. Tex. Jan. 21, 2021) (quoting Fearrington v. Boston Sci. Corp., 410 F. Supp. 3d 794, 801 (S.D. Tex. 2019)) (quotations omitted).

Defendants argue that Plaintiff fails to state a DTPA claim based on Defendants' alleged failure to warn of risks because the Amended Complaint does not (i) identify the warnings IMD provided to Plaintiff's physician, Dr. Kansas, nor alleges (ii) that those warnings were inadequate or (iii) that different warnings would have altered Dr. Kansas prescription decision or led him to provide additional or different information to Plaintiff. (Dkt. # 24 at 10.)

In the Amended Complaint, Plaintiff alleges that several studies indicate significant complications with the Penuma Device implantation which thus made Defendants aware of the problems with its Penuma Device. Plaintiff further identifies the following Penuma Device implant complications or "material risks" that were not disclosed: (1) "major penile shortening and disabling curvature" (Dkt. # 23 at 10); (2) implant removal could result in "fibrosis, and sexual dysfunction" (id.); (3) the procedure frequently causes "painful infections that lead to yet more scarring" (id. at 11).

With respect to Dr. Kansas's performance of the surgery, Plaintiff makes the following allegations: "During this consultation with Dr. Kansas, Mr. Gonzalez filled out a questionnaire and watched a video.  Mr. Gonzalez was also informed that the implantation of the Penuma was 'a simple and reversible procedure.'  At no point did Dr. Kansas inform Mr. Gonzalez that Penuma was not safe and effective or not FDA cleared for cosmetic enlargement of normal penises." (Id. at 6.)

Further, Plaintiff alleges that "Dr. Kansas memorialized his opinion that the older model of Penuma was defective and that a newer version, released in April 2023, would correct Mr. Gonzalez issues.  Ostensibly, the newer model, branded the Himplant, was designed to correct these known flaws by the Defendants' previous—failed product. In fact, Dr. Kansas, citing the number of dissatisfied Penuma patients, has since retired from the field leaving Mr. Gonzalez without continued after-care."  (Id. at 7.)  In Plaintiff's response, he argues "Defendants failed to adequately inform Dr. Kansas and other trained providers of material risks associated with Penuma, particularly regarding the varying FDA clearance statuses of different models."  (Dkt. # 26 at 7.)

The Court agrees that the factual allegations are lacking as to what specific warnings were provided by Defendants to Dr. Kansas about Penuma's FDA status for "cosmetic enhancement of normal penises", and whether those

warnings were inadequate.  However, by alleging that Dr. Kansas opined the older

model of the Penuma Device was defective and that he no longer provides the

Penuma implant surgery due to his patients' dissatisfaction, Plaintiff pleads factual

content that allows the Court to draw the reasonable inference that Dr. Kansas was

inadequately warned, and, but for those inadequacies, he would have

recommended a different treatment to Plaintiff.  See Iqbal, 556 U.S. 678.

Moreover, in Murthy v. Abbott Labs, the Southern District concluded

that dismissal of plaintiff's failure to warn claim on learned intermediary grounds

would not be appropriate on a motion to dismiss.  847 F. Supp. 2d 958, 973 (S.D.

Tex. 2012).  Rather, the court explained it would have to examine the factual

circumstances surrounding the compensation of the plaintiff's physician in order to

evaluate whether application of the learned intermediary doctrine is appropriate.

Id.  The court reasoned that the plaintiff's situation departed from the typical

treatment scenario in two respects because (1) the defendant directly marketed to

plaintiff by creating and disseminating a promotional video; and (2) defendant

compensated the plaintiff's physician.  Id. at 971.  That is because by creating and

disseminating a promotional video that, according to the plaintiff, fraudulently

touted an arthritis drug's efficacy, defendant may have circumvented the doctor-

patient relationship.  Id.

Here, Plaintiff similarly alleges that Defendants directly marketed the Penuma device and touted its efficacy and allegedly misrepresented its FDA status for cosmetic enhancement of normal penises.  (Dkt. # 23 at 18.)  In addition, Plaintiff alleges that approximately $6,000 is paid to IMD for purchase of the Penuma Device out of the $15,000–$20,000 total cost for implantation surgery.  (Id. at 10–11.)  Accordingly, the Court finds it premature to dismiss Plaintiff's claims under the learned intermediary doctrine at this time.

The Court finds Plaintiff has sufficiently stated a viable failure to disclose or warn claim under the DTPA.  Therefore, the Court **DENIES** Defendants' 12(b)(6) motion to dismiss for failure to state a claim.

<u>CONCLUSION</u>

For the reasons stated, the Court **DENIES** Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and (b)(6).  (Dkt. # 24.)

**IT IS SO ORDERED**.

**DATED:** Austin, Texas, June 20, 2025.

_____
David Alan Ezra
Senior United States District Judge

22