UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOSE M. GONZALEZ,<br>　　　Plaintiff,<br><br>*vs*.<br><br>INTERNATIONAL MEDICAL<br>DEVICES, et al.<br>　　　Defendants. | §<br>§<br>§<br>§<br>§   NO:  1:24-cv-00982-DAE<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S MOTION FOR A PRESERVATION INJUNCTION**

　　Plaintiff respectfully moves for entry of a Preservation Injunction to ensure the integrity of electronically stored information ("ESI") and hard-copy records relevant to this action. This relief is necessary because the existing record now contains documented instances of post-hoc modification, including altered complaint-file identifiers, revised UDI entries, and inconsistent metadata across versions of the same regulatory record. These irregularities establish a concrete and ongoing risk of spoliation if additional preservation measures are not promptly ordered.

　　The Court's authority to enter targeted preservation directives is clear under:

- Fed. R. Civ. P. 16(b)(3)(B)(iii) (judicial control over discovery),
- Fed. R. Civ. P. 26(b), 26(c), and 26(g) (scope, protection, and certification requirements),
- Fed. R. Civ. P. 37(e) (authority to prevent or remedy loss of ESI), and
- the Court's inherent power to protect the integrity of the judicial process.

A proposed order and Plaintiff's declaration are submitted concurrently.

Confidential exhibits are lodged under seal pursuant to the protective agreement.

1

**I.   INTRODUCTION AND RELIEF REQUESTED**

Discovery events to date make clear that a preservation order is necessary to prevent loss of evidence. The present record shows:

1. Highly selective ESI production by Defendants

   (no emails beyond a narrow slice of K220760 regulatory correspondence).

2. No identification of custodians, despite repeated requests.

3. No disclosed search parameters

   (no keywords, date ranges, repositories, or locations identified).

4. No disclosed retention or deletion policy, contrary to Rule 26 and standard ESI protocol expectations.

5. Refusal to certify reasonable search efforts under Rule 26(g).

6. Evidence of record modification, including:

   - multiple versions of the same complaint record showing different timestamps and UDI entries,
   - post-hoc UDI amendments approved in 2025,
   - inconsistent metadata indicating alteration of device-identity fields.

7. Third-party custodians in possession of IMD's regulatory files (RQM+), including K181387, K220760, and K223051 materials.

8. Volatile or easily altered public-facing content, including GUDID entries lacking catalog numbers, website labeling changes, and shifting device terminology ("Penuma," "Himplant," "Silicone Block," etc.).

Taken together, these facts demonstrate a *material risk* that relevant ESI or physical documents could be lost, overwritten, or modified absent a preservation injunction.

Plaintiff therefore requests an order requiring Defendants to:

- Identify all relevant ESI custodians, including employees, officers, consultants, contractors, and third-party agents.
- Suspend all auto-delete or purge functions on servers, local devices, cloud repositories, messaging platforms, and third-party systems.
- Preserve all systems, repositories, and accounts containing potentially responsive ESI (including regulatory, complaint-handling, marketing, distribution, and device-identity records).
- Disclose document-retention and deletion policies currently in effect.
- Preserve all consultant and subcontractor accounts, including regulatory consultants, RQM+, engineers, QA/QC staff, and marketing contractors.
- Certify compliance under Rule 26(g), including identification of the person(s) responsible for overseeing preservation efforts.

This motion does not seek sanctions, adverse inferences, or merits relief. It seeks only the baseline preservation protections necessary for discovery to proceed fairly.

## II.   FACTUAL BACKGROUND DEMONSTRATING A CLEAR RISK OF SPOLIATION

Plaintiff's concerns are not hypothetical. They arise from concrete events in this litigation, the nature of Defendants' systems, the manner in which responsive records are maintained, and evidence already showing alteration of device-identity data. Each of the following points independently supports preservation relief; collectively, they establish a substantial and imminent risk of spoliation.

A. <u>Defendants' ESI production has been extremely narrow and selectively limited to K220760</u>

To date, Defendants have produced only a small tranche of emails relating to the K220760 510(k) submission. Defendants have produced no ESI whatsoever concerning:

- marketing or advertising communications,
- surgeon-network correspondence,
- labeling or IFU discussions,
- internal regulatory analyses,
- Menova or International Medical Devices communications,
- shipment or distribution records,
- consultant or contractor email accounts (including the consultant "Ray"),
- communications with Dr. Kansas or any Texas surgeon,
- complaint or adverse-event discussions,
- or any executive-level communications (including COO Ramin Faghihirezaei).

This extremely narrow slice demonstrates that Defendants are capable of locating responsive ESI but have chosen to produce only a single sliver of the universe of discoverable material.

Courts routinely treat selective production as a major spoliation warning sign because it evidences undisclosed repositories, undeclared custodians, or unpreserved systems.

B. <u>Plaintiff has already encountered evidence of record modification, including changes to core device-identity data</u>

- The sealed complaint record (See Ex., A filed under seal) produced by Defendants shows the following:

4

- a complaint file originating in 2022,

- whose UDI and device-identity fields were modified nearly three years later,

- without annotation, notation, or a preserved audit trail, (See page one at "Unique Device Identifier (UDI)"

- with updated fields approved by QA personnel long after the underlying event,

- contradicting the requirement under 21 C.F.R. § 820.198 that complaint files be preserved as originally received.

The presence of multiple versions of the same record, with differing timestamps and differing UDI fields, establishes actual evidence of post-hoc modification, not speculation. This directly supports the need for immediate preservation controls. (See Ex., A.).

C. Defendants have identified *no custodians*

Despite multiple requests, Defendants have not identified:

- any custodians searched,

- any custodians not searched,

- any custodians holding responsive data,

- any IMD executives with relevant email accounts,

- any consultant or subcontractor accounts (regulatory, engineering, marketing, QA/QC),

- or any third-party custodians beyond RQM+.

Without a custodian list, it is impossible to evaluate the adequacy of preservation or search efforts. The absence of custodial identification is itself a Rule 26(g) red flag.

D. Defendants have disclosed no search terms, date ranges, methods, or repositories

Defendants have refused to disclose:

- search terms used or omitted,
- date ranges searched,
- the identity of repositories searched (servers, laptops, cloud accounts, mobile devices),
- whether mobile devices were imaged or preserved,
- whether shared drives were searched,
- whether cloud platforms (Microsoft 365, Teams, OneDrive, Google, Slack, etc.) were included,
- and whether any of the above are subject to auto-purge or rolling deletion.

The complete absence of search methodology creates a serious risk that relevant ESI is continuing to be lost. Selective methodology is a core trigger for preservation orders in federal courts.

E.  <u>Defendants have produced no retention policy and have declined to certify Rule 26(g) diligence</u>

Defense counsel has refused to certify:

- that reasonable inquiry was made,
- that ESI systems are preserved,
- that auto-delete functions have been suspended,
- or that a good-faith search has been conducted.

Failure to certify under Rule 26(g)—after being requested—is a recognized basis for preservation relief because it signals potential ongoing loss and lack of internal controls. This raises concerns about the adequacy of Defendants' preservation efforts.

F. <u>RQM+ maintains custody of IMD's full regulatory archive, creating chain-of-custody uncertainty</u>

RQM+ has confirmed:

- it possesses IMD/Elist/Menova regulatory files,
- including K181387, K220760, K223051, and supporting lineage documentation,
- while former IMD consultant Dr. Komiyama confirms she retained no copies of her regulatory work.

This creates two problems:

1. IMD may not have preserved any of the regulatory files internally or may retain only partial sets.
2. IMD cannot guarantee preservation of materials held by a third party unless compelled by order.

Where core files reside in non-party hands, courts routinely order preservation to prevent data loss, privilege disputes, or inadvertent overwriting.

G. <u>GUDID entries show manufacturer-controlled fields that have changed over time</u>

The FDA's GUDID is fed by manufacturer-submitted data. The GUDID entries for IMD's products reveal:

- missing catalog numbers,
- missing device descriptions,
- shifting or collapsed model identities ("Silicone Block" replacing "Penuma" or "Himplant"),

7

- multiple 510(k)s grouped into a single DI family,
- and public version dates that post-date Plaintiff's surgery.

These fields are modifiable by the labeler, and Defendants have already modified internal UDI data in Plaintiff's complaint file. This demonstrates a specific, non-hypothetical risk of further alteration without court-ordered preservation.

H. <u>Public promotional materials and web content have been removed or replaced</u>

Website archives (including the Wayback Machine) show that IMD/Elist promotional materials have been:

- removed,
- replaced,
- overwritten, or
- rendered inaccessible.

Promotional statements, risk disclosures, and intended-use representations are central to Plaintiff's misrepresentation and labeling claims. Their removal from public archival tools shows instability in the historical record and strongly supports entry of a preservation order targeting internal copies.

I. <u>Defendants are actively marketing current iterations of the device, creating ongoing risks of overwriting and auto-deletion</u>

Defendants continue to:

- publish new promotional content,
- operate surgeon-network scheduling tools,

8

- maintain a live marketing infrastructure,
- communicate with surgeons and distributors,
- and generate new digital records daily.

Active business systems inherently carry:

- rolling email deletion,
- overwritten server logs,
- refreshed cloud content,
- disappearing website versions,
- mobile-device churn,
- and routine overwriting of metadata.

Without immediate preservation directives, relevant history may be irretrievably lost in the ordinary course of Defendants' ongoing operations.

## III.   LEGAL STANDARD

The Court has broad authority to issue preservation orders under:

- Fed. R. Civ. P. 16(b) (case-management oversight),
- Fed. R. Civ. P. 26(b)(1), 26(b)(2), 26(c), 26(g) (scope, proportionality, and certification),
- Fed. R. Civ. P. 37(e) (loss of ESI and preventative measures),
- and the Court's inherent power to prevent spoliation and protect the integrity of the judicial process.

Fifth Circuit courts—including Rimkus, Condon, and cases applying Zubulake—recognize that a preservation injunction is appropriate where:

1. relevant ESI is at real risk of loss,

2. the producing party's efforts are uncertain, inadequate, or opaque,

3. the request is targeted and proportional, and

4. the burden of preservation is minimal compared to the risk of irreparable evidentiary harm.

Each condition is satisfied here.

## IV.   APPLICATION OF THE STANDARD TO THE FACTS

A preservation order is warranted because:

A. Defendants' production of only a narrow K220760 email slice shows responsive ESI exists but is being filtered.

B. Defendants have identified no custodians, rendering preservation unverifiable.

C. Defendants have disclosed no search terms, date ranges, or collection methods, preventing any assessment of adequacy.

D. Defendants have disclosed no retention policy, leaving routine deletion and auto-purge systems unchecked.

E. A modified complaint record—with updated UDI and metadata nearly three years after creation—proves actual vulnerability to alteration.

F. Core regulatory files are held by third-party custodian RQM+, creating chain-of-custody uncertainty.

G. Manufacturer-editable GUDID fields increase traceability risk where device identifiers and model families have already shifted.

H. Public promotional content has disappeared or changed in web archives, showing instability in materials central to the claims.

I. Defendants continue to actively market device iterations, creating real-time risks from rolling deletion logs, mobile churn, and cloud overwrites.

Given these conditions, a preservation injunction is the minimal prophylactic measure necessary to protect the evidentiary record.

## V.    REQUESTED RELIEF (NARROW AND SPECIFIC)

Plaintiff respectfully requests an order requiring Defendants to:

1. Identify all ESI custodians, including employees, executives, consultants, subcontractors, and third-party agents.

2. Identify all ESI repositories, including servers, cloud services, laptops, mobile devices, shared drives, messaging platforms, and consultant accounts.

3. Suspend all deletion, overwriting, auto-purge, or cleanup functions affecting any such data sources.

4. Preserve all materials related to:

    - 510(k) submissions (K042380, K162624, K181387, K220760, K223051),
    - labeling, warnings, and intended-use discussions,
    - marketing, advertising, websites, promotional videos, and surgeon-network materials,
    - communications with physicians (including Texas surgeons),
    - regulatory and engineering communications, including "Ray" and other consultants,
    - IMD–Menova intercompany communications,
    - complaint and adverse-event handling,
    - shipment and distribution records,
    - training and sales-support materials.

5. Disclose all retention and deletion policies currently in effect.

6. Certify compliance under Rule 26(g) by a responsible corporate representative.

7. Submit a 60-day preservation status report confirming ongoing compliance.

This relief is limited, proportional, and necessary to ensure the integrity of the record while discovery proceeds.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the attached Preservation Injunction Order.

Respectfully Submitted this 24th day of November 2025.

*[signature]*

**Jose M. Gonzalez,** Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

**[ATTACHMENTS]**

Exhibit A – Modified complaint record showing updated UDI – filed under SEAL

## CERTIFICATE OF SERVICE

I, Jose M. Gonzalez, Plaintiff pro se, do hereby certify that on the 24th Day of November 2025, a true and correct copy of the foregoing:

PLAINTIFF'S MOTION FOR A PRESERVATION INJUNCTION

were filed with the Clerk using the ECF system which will give notice of the filing to all counsel of record.  Furthermore, that a person(s) not listed in the ECF system have been provided a copy by United States Postal Mail Certified with Signature Requested at the following addresses:

**Defendants**: International Medical Devices, Inc. ("IMD"); Menova International, Inc., ("Menova"); James J. Elist, M.D., a Medical Corporation; and, Dr. James Elist is an individual residing in Beverly Hills, California, as being represented by:

### BOWMAN AND BROOKE LLP

**Randall L. Christian**
Federal ID No. 15935
Texas Bar No. 00783826
randall.christian@bowmanandbrooke.com

**Jonathan L. Smith**
Federal ID No. 3632192
Texas Bar No. 24088436
jonathan.smith@bowmanandbrooke.com

**DATE: 11/24/2025**

/s/   Jose M. Gonzalez, Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

13