UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOSE M. GONZALEZ,<br>　*Plaintiff*,<br><br>v.<br><br>INTERNATIONAL MEDICAL<br>DEVICES, INC., *et al.,*<br>　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 1:24-cv-00982-DAE<br>(ORAL ARGUMENT REQUESTED) |

### DEFENDANTS' RESPONSE TO
### PLAINTIFF'S MOTION FOR PRESERVATION INJUNCTION

Even aside from violating the 10-page limit for non-dispositive motions set by L.R. CV-7(d)(3) and the certification of conference requirement of L.R. CV-7(i), Plaintiff's Motion for Preservation Injunction should be denied for the following reasons:

#### INTRODUCTION & BACKGROUND

There are only two claims asserted in this action.[1] Plaintiff alleges first that Defendants[2] violated the Texas Deceptive Trade Practices Act ("DTPA") by representing that the penile implant he received (the "Device") was "FDA-cleared … for cosmetic enhancement" when, according to Plaintiff, it was "FDA-cleared only 'for use in the cosmetic correction of soft tissue deformities.'"[3] Next, Plaintiff claims Defendants violated the DTPA by failing to warn him of various risks associated with the Device.[4]  To establish these two exceedingly straightforward

---

[1] *See* Order Denying Defs' Mot. to Dismiss, ECF No. 30, at 15.
[2] As used herein, the term, "Defendants," means and collectively refers to International Medical Devices, Inc. ("IMD"), Menova International, Inc. ("Menova"), James J. Elist M.D., a Medical Corporation ("Elist Medical"), and James Elist, M.D. ("Dr. Elist").
[3] First Am. Compl., ECF No. 23, at 2, 15-16 (emphasis omitted).
[4] *Id.* at 5-10.

1

claims, Plaintiff propounded sixty-nine requests for production on Defendants and recieved 239 pages in response.[5]

Unsatisfied, Plaintiff filed a Motion to Compel Production of Emails and Communications,[6] which the Court denied on various grounds including Plaintiff's failure to meaningfully confer with Defendants to resolve the matter prior to seeking Court intervention.[7] Following the denial of Plaintiff's Motion to Compel, the parties conferred regarding the alleged production deficiencies, and, in a good faith effort to satisfy Plaintiff's demands, Defendants supplemented their production with an additional 560 pages. After said supplemental production, the parties again conferred, and Defendants confirmed their continued search for various materials Plaintiff claims are discoverable and responsive to his production requests. But despite Defendants' ongoing efforts to supplement their production sets, Plaintiff again elected to short-cut the collaborative process by filing his Motion for Preservation Injunction (the "Motion"), which should be denied because Plaintiff has not established entitlement to the relief requested.

## ARGUMENT

**A. Legal standard.**

In this District, a motion seeking entry of a preservation order is assessed under two similar tests:

- the proponent must show a significant risk that relevant evidence will be lost or destroyed, and that the particular steps to be adopted will be effective, but not overbroad (from *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (Fed. Cl. 2004)); and

- (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of

---

[5] On November 24, 2025, Plaintiff served Defendants with second and third sets of production requests, but those request are not implicated in his present.
[6] Pl's Motion to Compel, ECF No. 48.
[7] *See* Order Denying Pl's Mot. to Compel, ECF No. 52, at 3-4.

evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation (from *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004)).

*Mathews v. Executive Office for United States Attorneys*, 2020 WL 10354076, at *2 (W.D. Tex. Oct. 6, 2020) (quoting *Legacy of Life, Inc. v. Am. Donor Servs., Inc.*, No. SA-06-CA-0802-XR, 2006 WL 8435984, at *2 (W.D. Tex. Sept. 21, 2006)). Plaintiff has not and cannot satisfy either test.

**B. Plaintiff has not and cannot show a significant risk that relevant evidence will be lost or destroyed absent entry of a preservation order.**

Plaintiff presents what he characterizes as nine "discovery events" which, he claims, establish "that a preservation order is necessary to prevent loss of evidence."[8] None, however, come close to doing so.

**1. Allegedly limited ESI production to date.**

Plaintiff asserts, in conclusory fashion, that "Defendants have produced only a small tranche of emails relating to the K220760 submission[,] but have produced no ESI concerning:

- marketing or advertising communications,
- surgeon-network correspondence,
- labeling or IFU discussions,
- internal regulatory analyses,
- Menova or International Medical Devices communications,
- shipment or distribution records,
- consultant or contractor email accounts (including the consultant "Ray"),
- communications with Dr. Kansas or any Texas surgeon,
- complaint or adverse-event discussions,
- or any executive-level communications (including COO Ramin Faghihirezaei).[9]

---

[8] Pl's Mot. for Preservation Injunction, ECF No. 53, at 2-8.
[9] *Id*. at 4.

3

Although Defendants have, in fact, produced materials in each of these categories, except perhaps the last one, Plaintiff's argument fails even if that weren't the case. First, Plaintiff has not shown that any of these *extremely* broad categories contain evidence relevant to his claims *or* that Defendants had a duty to produce such materials. Second, and more importantly, even were the Court to assume such materials exist, constitute relevant evidence, and are responsive to pending discovery requests, Plaintiff has not so much as articulated, much less established, a reason why the Court should be concerned that such materials will be lost or destroyed absent a preservation order. Plaintiff does not do so because there is no such concern.

> **2. Alleged evidence tampering.**

The rhetorical thrust of Plaintiff's Motion revolves around his claim that the "Complaint Record" of Plaintiff's experience with the Device—which was compiled and produced by defendant International Medical Devices, Inc. ("IMD")—shows that Defendants engaged in post-hoc evidentiary modification. Specifically, Plaintiff claims that Defendants tampered with the evidentiary record by "alter[ing] compliant-file identifiers" and "revis[ing] UDI entries."[10] This claim is utter nonsense.

At issue is the following portion of the Complaint Record:



[11]

---

[10] *Id.* at 1.
[11] *See* Exhibit A (sealed) to Pl's Mot. for Preservation Injunction at GONZALEZ_IMD_000003 (highlighted emphasis added).

According to Plaintiff, the adding of the "1/3/2025 Update" to the Unique Device Identifier field has resulted in "multiple versions of the same record, with differing time stamps, [thus,] establish[ing] actual evidence of post-hoc modification." Not so. All the "1/3/2025 Update" reflects is that IMD fulfilled its regulatory duty of keeping the Complaint Record up-to-date which is evident when one reviews the Complaint Record in its entirety.  In sum, Plaintiff's argument is silly.

### 3-5. Alleged failure to identify custodians, provide ESI search terms, produce document retention policy, and execute certification under Rule 26(g).

Plaintiff next argues that Defendants' refusal to identity "custodians," disclose ESI search terms and parameters, produce document retention policies, and certify their discovery responses under Rule 26(g): (i) renders it impossible to evaluate the adequacy of Defendants' search for responsive materials; (ii) "creates a serious risk that relevant ESI is continuing to be lost"; and, (iii) thus, is contrary to Rule 26 and "standard ESI protocol expectations."[12] Again, nonsense.

First, Defendants did not identify custodians because Defendants did not perform custodian searches, nor were they obliged to. Defendants, rather, performed and continue to perform a reasonably diligent search for responsive materials in compliance with the relevant procedural rules. Second, Defendants never produced a document retention policy because Plaintiff never served a request for the production of such a policy.  Third, the parties did not enter a stipulation concerning, nor has the Court ordered, an ESI protocol. Therefore, the procedures set forth in Rule 34(b)(2)(E)(i-ii) expressly govern Defendants' obligations with respect "to producing documents or [ESI]," and those procedures require Defendants to (i) produce responsive documents as they are kept in the usual course of business; and (ii) ESI in the form in which it usually maintained or

---

[12] Pl's Mot. for Preservation Injunction, ECF No. 53, at 5.

in another reasonably useable form.[13] Defendants have complied with these rules, and Plaintiff does not contend otherwise. Fourth, undersigned has repeatedly attempted to explain to Plaintiff that certification under Rule 26(g) is affected by the signing of the discovery response(s) by the responding party's counsel. Defendants' discovery responses were so signed, and, thus, Defendants have made the requisite certification under Rule 26(g). Lastly, and again, more importantly, Plaintiff has not provided *any* basis to support a finding that absent issuance of preservation order, relevant evidence will be lost or destroyed.

### 6. Alleged chain-of-custody uncertainty concerning IMD's regulatory archive.

Next, Plaintiff asserts, without evidence and in conclusory fashion, that "RQM+ has confirmed it possess [Defendants'] regulatory files."[14] This, according to Plaintiff, creates two problems: (1) IMD may not have preserved any of the regulatory files; and (2) IMD cannot guarantee preservation of materials held by a third party unless compelled by order.[15] Plaintiff's argument, whatever it is, is misplaced. First, if IMD has already failed to preserve "any of the regulatory files," as Plaintiff seems to claim, the issuance of a preservation order isn't going to make those unpreserved files reappear. Second, Plaintiff appears to be seeking injunctive relief against RQM+, which he cannot obtain by moving for a preservation order against Defendants. Moreover, the "regulatory" materials already produced by Defendants provide are far more than sufficient to establish the sole fact to which they are pertinent; *i.e.*, was the Device Plaintiff received was cleared by FDA for penile cosmetic augmentation? (The answer, by the way, is indisputably, yes.)

---

[13] *See* Fed. R. Civ. P. 34(b)(2)(E)(i-ii).
[14] Pl's Mot. for Preservation Injunction, ECF No. 53, at 7.
[15] *Id*.

### 7. FDA's GUDID Database.

Plaintiff next argues—again, without evidence—that: (i) IMD can enter data concerning its products in an FDA maintained, medical device product identification database; and (ii) entries in that database for "IMD's products reveal missing [data.]"[16]  Therefore, Plaintiff argues, because IMD has already tampered with the evidentiary record vis-à-vis the "Complaint Record" discussed above, it will clearly tamper with the GUDID database absent a preservation order.  Plaintiff has not, however, shown that IMD tampered with the Complaint Record,[17] nor has he shown any basis for limiting IMD's access to the federal database.

### 8. Alleged loss of public promotional materials.

Plaintiff next argues that because he cannot rely on internet archives to provide him with all advertising that Defendants might have posted online in years past, the preservation of analogous material in Defendants' possession is all the more crucial.[18]  Again, however, what Plaintiff fails to show is any risk that any such materials in Defendants' possession will be lost or destroyed absent a preservation order.

### 9. Defendants' ongoing business operations.

Lastly, Plaintiff argues—without evidence—that just by carrying on their day-to-day business operations, Defendants will generate new data that may overwrite existing data that may constitute relevant evidence to Plaintiff's claims.[19]  If such an argument could support the issuance of preservation order, then preservation orders would be necessary in every case wherein discovery

---

[16] *Id*.
[17] *See supra* Part 1.B.
[18] Pl's Mot. for Preservation Injunction, ECF No. 53, at 8.
[19] *Id*. at 9.

7

is sought from a commercial defendant. Plaintiff has again failed to show a significant risk that relevant evidence will be lost or destroyed absent entry of a preservation order.

## CONCLUSION

Wherefore, premises considered, Defendants respectfully request that Plaintiff's baseless Motion for Preservation Injunction be denied.

Respectfully Submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Jonathan L. Smith*
    Randall L. Christian
    Federal ID No. 15935
    Texas Bar No. 00783826
    randall.christian@bowmanandbrooke.com
    Jonathan L. Smith
    Federal ID No. 3632192
    Texas Bar No. 24088436
    jonathan.smith@bowmanandbrooke.com

2901 Via Fortuna Drive, Suite 500
Austin, Texas 78746
Tel: (512) 874-3800
Fax: (512) 874-3801

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument and all attachments thereto was filed with the Clerk via the ECF system which will give notice of the filing to Plaintiff, who has registered as an ECF user.

*/s/ Jonathan L. Smith*
Jonathan L. Smith