UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOSE M. GONZALEZ,<br>    Plaintiff,<br><br>*vs.*<br><br>INTERNATIONAL MEDICAL DEVICES,<br>INC. ("IMD"); MENOVA<br>INTERNATIONAL, INC., ("MENOVA");<br>JAMES J. ELIST, M.D., A MEDICAL<br>CORPORATION; AND DR. JAMES ELIST,<br>    Defendants. | Case No: **1:24-cv-00982-DAE** |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FAILURE TO DISCLOSE

Comes now Plaintiff Jose Gonzalez and moves this Court for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Plaintiff's claim under the Texas Deceptive Trade Practices Act for failure to disclose material information. See Tex. Bus. & Com. Code § 17.46(b)(24). As set forth below, the material facts concerning Defendants' knowledge of the Penuma device's FDA-cleared indication and Defendants' nondisclosure of that qualifying limitation during Plaintiff's consumer transaction are not in genuine dispute, and partial summary judgment is appropriate on those undisputed nondisclosure issues.[1]

Plaintiff does not ask the Court to decide intent to induce, producing cause, damages, or any remedy issues at this stage. Plaintiff seeks a narrow ruling establishing that:

- during the relevant transaction period, FDA clearance for the Penuma device was limited to cosmetic correction of soft tissue deformities under 510(k) No. K181387;

---

[1] As used herein, "Defendants" refers collectively to International Medical Devices, Inc.; Menova International, Inc.; James J. Elist, M.D., a Medical Corporation; and Dr. James J. Elist, an individual.

- Defendants possessed actual knowledge of that limitation; and

- Defendants did not disclose that limitation in the consumer-facing materials and communications used to market, screen, and approve Plaintiff for surgery.

Resolving these objective, documentary issues will streamline trial by narrowing the dispute to the remaining elements reserved for the factfinder.

## I. STATEMENT OF FACTS

### A. IMD's Direct-to-Consumer Marketing and Plaintiff's Initial Contacts

In 2016, the Penuma implant was promoted to the general public through mainstream lifestyle media, including a feature article published in *GQ* magazine. [See, *Ex. A; GQ Magazine Article Featuring the Penuma Implant*]. The article presented the Penuma device as a cosmetic penile implant and associated it with celebrity and athletic culture, contributing to public awareness of the product through non-clinical media. [See *Ex. B; GONZALEZ_RFP_3–6 — Feb. 28, 2022, email from "Ray" with marketing materials; see also, Dkt. 30 at ¶21–22 (recognizing allegations of direct-to-consumer marketing)*].

Plaintiff Jose Gonzalez is a Texas resident. Defendants admit that Plaintiff resides in Webb County, Texas. [See *Dkt 34 at ¶ 6; Defendants' Amended Answer*].

After encountering the Penuma device through this media coverage, Plaintiff visited the manufacturer's website and provided his contact information. [See *Ex. C; Archived Capture of Defendants' Penuma Website — March 22, 2017*]. Beginning in December 2016, Plaintiff received direct emails from representatives of the manufacturer, International Medical Devices, Inc. ("IMD"), and its affiliates. These communications were consumer-facing and promotional in

nature and were directed to Plaintiff as a prospective consumer. [See *Ex. D; GONZALEZ_RFP_1 — Dec. 15 email from "Zack, Male Enhancement Consultant"*].

Between 2016 and 2017, Plaintiff received additional follow-up communications from IMD representatives continuing to promote penile enlargement or enhancement procedures and encouraging Plaintiff to pursue surgery. These communications were not limited to medical counseling or physician-to-physician discussion but were directed toward Plaintiff in his capacity as a consumer. [ *Ex.'s B and D; collectively*].

None of the GQ coverage, website capture, or eligibility emails cited above disclose that the Penuma device's FDA clearance was limited to cosmetic correction of soft tissue deformities rather than cosmetic augmentation.

**B. IMD's FDA Clearance for the Penuma is Explicitly Limited to Cosmetic Correction of Soft Tissue Deformities**

1. <u>IMD Obtains FDA Clearance for Deformity Correction Only Under K181387</u>

In 2019, Defendant IMD received FDA clearance under the 510(k) premarket notification process for a device identified as the "Pre-Formed Penile Silicone Block," 510(k) No. K181387. [See *Ex. E; FDA 510(k) Clearance Letter — K181387*].

Consistent with that clearance, the FDA-cleared Indications for Use for K181387 state that the device is "intended for use in the cosmetic correction of soft tissue deformities" and is contoured at the surgeon's discretion to create a custom implant. IMD admits this clearance and its stated indication without qualification. [See *Dkt 34 at ¶40;* and generally, *Defendants' Amended Answer*].

Defendants further admit that penile soft tissue deformities, such as Peyronie's disease, congenital micropenis, and congenital ventral curvature, are rare but serious medical conditions that can cause significant pain and other complications. [See *Dkt 34; at* ¶ 41 *Defendants' Amended Answer*].

2. <u>IMD Seeks to Modify the Indications for Use to Include "Augmentation"</u>

This remained the device's cleared Indications for Use language when IMD initiated its subsequent K220760 submission. [See *Ex. F; FDA Acknowledgment re: K220760, received date, March 15, 2022*].

By this time, the Penuma device had already been promoted for several years through media coverage and online materials, including the GQ article and website content described above, including interviews, presentations, and online content featuring the device's inventor. (See *Dkt. 30 at* ¶*2–3*). During this period, IMD continued to maintain a direct consumer marketing presence.

Defendants admit that Dr. Elist trained all physicians that were authorized to perform Penuma implantations. [See *Dkt 34; at* ¶ 29 *Defendants' Amended Answer*].

On March 15, 2022, the U.S. Food and Drug Administration acknowledged receipt of a new premarket notification submitted by IMD for the Pre-Formed Penile Silicone Block and assigned the submission FDA 510(k) No. K220760. [See *Ex. F; FDA Acknowledgment re: K220760, received date, March 15, 2022*].

3. <u>The FDA Warns That "Augmentation" Language Risked Misleading Patients</u>

In FDA's subsequent interactive review of that submission, the agency stated that IMD had "provided K220760 submission to propose a change of the Indications for Use (IFU) statement" and specifically questioned IMD's addition of the term "augmentation," explaining that penile "augmentation" could lead users to believe the device would increase the functional size of the penis even though the device "provides only visual enlargement in the flaccid state." [See *Ex. G; RQM+ Emails Regarding K220760 Indications for Use Language, Dated April 29–May 3, 2022*].

In contemporaneous internal correspondence responding to FDA's interactive review, Defendants expressly acknowledged the consumer-perception implications of the proposed "augmentation" language. In an April 29, 2022, email concerning the K220760 review, Dr. James Elist objected to FDA-prompted wording that emphasized "visual" versus "functional" effects, stating that such language would be "confusing" and would "clearly [imply] that 'functional augmentation' isn't covered." [See *Ex. G; at GONZALEZ_IMD_000776*]. This internal discussion confirms that Defendants understood FDA's concern as one bearing directly on how patients would interpret the scope and effect of the device's authorized use.

4. <u>FDA Directs IMD to Revise the Indications for Use and Labeling</u>

The same interactive review document directed IMD to revise its materials 'on Indications for Use (IFU), Labeling (Package Insert), and 510(k) Summary.' [See *Ex. H; FDA Interactive Review Questions and Directive — K220760, dated May 3, 2022*].

5

C. **Plaintiff's Device Was Manufactured, Marketed, and Distributed Under K181387 Before the Revised IFU Took Effect**

According to MAUDE[2] Adverse Event Report No. 3010066546-2024-00001, published by the FDA, the Penuma device later implanted in Plaintiff was manufactured on February 11, 2022. That MAUDE entry lists Lot No. 896436 and identifies the device under PMA/PMN Number K181387, indicating that Plaintiff's implant was manufactured under the earlier K181387 clearance. [See *Ex. I; FDA MAUDE Adverse Event Report* and *Ex. M; Implant Identification Record*].

On or about February 25, 2022, Plaintiff remained in direct contact with IMD about undergoing the Penuma procedure. [See *Ex. J; Penuma Eligibility Questionnaire and Related Consumer Communications*]. On February 28, 2022, IMD consultant "Ray" emailed Plaintiff confirming receipt of his eligibility form, identifying Texas urologist Dr. Bryan Kansas as the consulting physician, and providing consumer-facing materials on pricing, expected results, and "Penuma In the Press," including a GQ feature as third-party media coverage of the Penuma implant. [See *Ex. B; GONZALEZ_RFP_3–6 — Feb. 28, 2022, email from "Ray" with marketing materials*].

On May 13, 2022, FDA clearance associated with K220760 became effective. [See *Ex. K; FDA 510(k) Substantial Equivalence Clearance K220760 — Pre-Formed Penile Silicone Block, dated May 13, 2022*]. Following that clearance, IMD adopted revised Indications for

---

[2] Ex. I; Plaintiff relies on the MAUDE entry solely to identify the device's manufacture date, lot number, and association with 510(k) No. K181387, not for any inference regarding defect, causation, or fault. The MAUDE report's identifiers correspond to International Medical Devices' internal complaint record for Plaintiff's implant, including the same MDR report number, lot number, and implantation date, as reflected in IMD's business records produced in discovery. This evidence is offered only for identification and timeline purposes.

Use and labeling stating that, when used in augmentation procedures, the device 'provides cosmetic augmentation of the penis' but may not result in functional augmentation in the erect state. [See *Id. and Ex. G; RQM+ Emails Regarding K220760 Indications for Use Language, Dated April 29–May 3, 2022*].

This clearance and revised language postdated the consumer marketing, eligibility screening, device manufacture, and physician referral experienced by Plaintiff. During the period in which Plaintiff was marketed, screened, referred, and implanted, IMD's consumer-facing materials, including the emails and website content cited above, described the Penuma as a cosmetic enlargement or enhancement procedure. [ Ex.'s B and D; collectively].

Plaintiff ultimately underwent implantation of the Penuma device on August 2, 2022. [See *Ex. L; Operative Report — Penuma Implant Procedure Date of Surgery: August 2, 2022*]. The operative records reflect that the procedure was performed for cosmetic penile augmentation and do not identify any underlying soft tissue deformity as the surgical indication. [*Id*.].

## II.   LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable factfinder could return a verdict for the nonmoving party. *Id*.

The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323–24 (1986). Once that burden is met, the nonmovant must come forward with specific evidence showing that there is a genuine issue for trial; metaphysical doubt or conclusory assertions are insufficient. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255. However, the Court is not required to sift through the record to find evidence creating a fact issue; the nonmovant bears the burden of designating specific evidence demonstrating a genuine dispute. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Where the material facts are undisputed and only legal consequences flow from those facts, summary judgment is particularly appropriate. See *Anderson*, 477 U.S. at 250.

B. **Legal Standard for DTPA Failure-to-Disclose Claims**

The Texas Deceptive Trade Practices Act prohibits the failure to disclose material information concerning goods or services that was known at the time of the transaction, if such failure was intended to induce the consumer into a transaction the consumer would not otherwise have entered. Tex. Bus. & Com. Code § 17.46(b)(24).

To establish liability under § 17.46(b)(24), a plaintiff must show:

1. the defendant failed to disclose information concerning goods or services;
2. the information was known to the defendant at the time of the transaction;
3. the failure to disclose was intended to induce the consumer into the transaction; and
4. the consumer would not have entered the transaction had the information been disclosed. See: *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

8

Unlike other DTPA provisions, liability under § 17.46(b)(24) may be based on silence alone where the defendant possesses actual knowledge of the undisclosed information. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995). A defendant has no duty to disclose facts it does not know, but once actual knowledge is established, intentional nondisclosure of material information may constitute a deceptive act as a matter of law. *Id*.

Intent to induce may be inferred from objective manifestations and the surrounding circumstances, including the nature of the transaction and the defendant's course of conduct. Tex. Bus. & Com. Code § 17.45(9); Also see *Christians v. Flores*, No. 01-20-00307-CV, 2022 WL ___ (Tex. App.—Houston [1st Dist.] Mar. 3, 2022, no pet.) (mem. op.).

Effectively, summary judgment may be granted on discrete, undisputed elements of a § 17.46(b)(24) claim, with remaining elements reserved for trial. See *Merrikh v. Costa*, No. 14-22-00312-CV, 2024 WL ___ (Tex. App.—Houston [14th Dist.] July 25, 2024, no pet.) (mem. op.).

**III.   Argument**

**A. This Motion Seeks a Narrow Ruling on Undisputed Nondisclosure, Not a Determination of Ultimate Causation**

This motion does not ask the Court to decide every element of Plaintiff's DTPA claim, nor to resolve questions concerning Plaintiff's subjective motivations or credibility. Rather, Plaintiff seeks partial summary judgment on a narrow set of issues under Tex. Bus. & Com. Code § 17.46(b)(24):

- that, at the time of Plaintiff's transaction, a material limitation existed on the scope of FDA clearance governing the Penuma device (cosmetic correction of soft tissue deformities only);
- that Defendants had actual knowledge of this limitation; and that Defendants did not disclose this limitation in the consumer-facing materials and communications used to market, screen, and approve Plaintiff for surgery.

These points are established by Defendants' own admissions, FDA submissions and correspondence, and Defendants' written marketing and eligibility communications, and may be decided as a matter of law without reaching intent to induce, producing cause, damages, or remedies.

B. **Defendants Possessed Actual Knowledge of a Material Limitation on Authorized Use**

The undisputed record establishes that, during the relevant period, FDA clearance for the Penuma device was limited to cosmetic correction of soft tissue deformities under 510(k) No. K181387. Defendants admit that, in 2019, IMD received 510(k) clearance for the "Pre-Formed Penile Silicone Block," and that the cleared Indications for Use state that the device is "intended for use in the cosmetic correction of soft tissue deformities" and is contoured at the surgeon's discretion to create a custom implant. [See *Ex. E; FDA 510(k) Clearance Letter — K181387* and *Defendants' Amended Answer ¶ 40*]. Defendants further admit that penile soft tissue deformities such as Peyronie's disease, congenital micropenis, and congenital ventral curvature are rare but serious conditions. (*Defendants' Amended Answer ¶ 41*).

This limitation was not speculative, ambiguous, or later discovered. It was the express content of Defendants' own 510(k) submission and the FDA's clearance record. (FDA 510(k) clearance documentation for K181387. [See *Ex. E; FDA 510(k) Clearance Letter — K181387*].

Defendants later initiated a subsequent submission, K220760, "to propose a change of the Indications for Use (IFU) statement," in which the FDA specifically questioned IMD's addition of the term "augmentation" and warned that penile "augmentation" could lead users to believe the device would increase the functional size of the penis even though it "provides only visual enlargement in the flaccid state." [See *Ex. H; FDA Interactive Review Questions and Directive — K220760, dated May 3, 2022*].

By definition, Defendants were aware of the contents of their own K181387 submission and the FDA correspondence relating to K220760. No reasonable juror could conclude that Defendants lacked actual knowledge of the limited, deformity-correction indication in effect during the period Plaintiff was marketed, screened, and referred. Actual knowledge of this limitation is therefore established as a matter of law on this record.

C. **Defendants Did Not Disclose That Limitation in the Consumer Transaction at Issue**

In contrast to the regulatory record, none of the consumer-facing materials used in Plaintiff's transaction disclosed that the Penuma device's FDA clearance was limited to cosmetic correction of soft tissue deformities.

The GQ feature and related media highlighted Penuma as a cosmetic penile implant associated with enhancement, confidence, and lifestyle appeal, not as a treatment for rare deformities. [See, *Ex. A; GQ Magazine Article Featuring the Penuma Implant*]. IMD's website FAQ, as captured in March 2017, provided consumer-facing information regarding safety,

satisfaction, risks, and cost, but did not state that FDA clearance was restricted to soft tissue deformities. [See *Ex. C; Archived Capture of Defendants' Penuma Website — March 22, 2017*]. IMD's direct emails to Plaintiff—from a "Male Enhancement Consultant" and later from "Ray"—promoted the Penuma as an enlargement or enhancement procedure, confirmed Plaintiff as "an eligible candidate for the Penuma enhancement procedure," and funneled him to a Texas surgeon for cosmetic augmentation, without disclosing that the operative 510(k) indication was limited to deformity correction. [ *Ex.'s B and D; collectively*].

Defendants have identified no consumer-facing document in Plaintiff's transaction that informed him that FDA had cleared the device only "for use in the cosmetic correction of soft tissue deformities," or that distinguished deformity correction from cosmetic enlargement of normal anatomy. On this record, the existence of the limitation, Defendants' knowledge of it, and its absence from the marketing and eligibility communications directed to Plaintiff are not genuinely disputed.

D. **The Existence, Knowledge, and Nondisclosure of the Limitation Are Properly Resolved on Summary Judgment**

Whether a material limitation on the Penuma's authorized use existed (the K181387 indication), whether Defendants knew of it (through their own 510(k) submissions and admissions), and whether it was disclosed in the specific consumer communications at issue are objective questions answered by documents already in the record. Resolving those questions does not require the Court to weigh credibility, assess competing expert opinions, or determine Plaintiff's subjective understanding.

At this stage, Plaintiff does not ask the Court to decide whether Defendants intended to induce Plaintiff's transaction, whether the nondisclosure was a producing cause of Plaintiff's damages, or what damages or remedies may be appropriate. Those issues may properly be reserved for the factfinder. The existence of the limitation, Defendants' knowledge of it, and its absence from the GQ article, website capture, and IMD's marketing and eligibility emails are classic documentary issues suitable for partial summary judgment.

### E. The Nondisclosure Objectively Altered the Consumer Message Presented

Texas law recognizes that a seller's silence regarding a known, material limitation concerning goods or services can render an otherwise accurate description misleading by omission. See Tex. Bus. & Com. Code § 17.46(b)(24). Here, the undisputed record shows that Defendants marketed the Penuma to Plaintiff as a cosmetic enlargement or enhancement procedure for a healthy consumer, while omitting the fact that the device's FDA clearance in effect at the time was limited to cosmetic correction of soft tissue deformities.

Recognizing that this omission altered the objective content of the consumer message does not require the Court to interpret or enforce FDA regulations. It requires only a comparison between (1) what Defendants told the FDA about the scope of authorized use, and (2) what Defendants did not tell Plaintiff when soliciting, screening, and approving him for surgery. Whether Defendants intended that omission to induce Plaintiff and whether it was a producing cause of Plaintiff's damages remain reserved for trial.

### F. Intent to Induce, Producing Cause, Damages and Remedies Are Reserved

Plaintiff does not seek summary judgment on the remaining elements associated with § 17.46(b)(24), including intent to induce, producing cause, damages, or remedies. Those issues

13

may properly be resolved at trial based on the established nondisclosure and the broader factual context.

Granting partial summary judgment on the existence of the K181387 limitation, Defendants' actual knowledge of that limitation, and its nondisclosure in the consumer transaction at issue will narrow the scope of trial, focus the jury on genuinely disputed issues, and prevent re-litigation of documentary questions that are not subject to reasonable dispute.

## IV.   CONCLUSION

The undisputed summary-judgment record establishes that, during the relevant transaction period, FDA clearance for the Penuma device was limited to cosmetic correction of soft-tissue deformities under 510(k) No. K181387; that Defendants possessed actual knowledge of that limitation; and that Defendants did not disclose that limitation in the consumer-facing materials and communications used to market, screen, and approve Plaintiff for surgery.

Plaintiff respectfully requests that the Court grant partial summary judgment limited to these objective nondisclosure issues, and that all remaining questions, including intent to induce, producing cause, damages, and remedies, be reserved for trial.

Respectfully Submitted this 5th day of January 2026.

**Jose M. Gonzalez,** Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

## CERTIFICATE OF SERVICE

I, Jose M. Gonzalez, Plaintiff pro se, do hereby certify that on the 5th day of January 2026, a true and correct copy of the foregoing:

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ON FAILURE TO DISCLOSE**

via email to:

**Defendants**: International Medical Devices, Inc. ("IMD"); Menova International, Inc., ("Menova"); James J. Elist, M.D., a Medical Corporation; and, Dr. James Elist is an individual residing in Beverly Hills, California, as being represented by:

### BOWMAN AND BROOKE LLP

**Randall L. Christian**
Federal ID No. 15935
Texas Bar No. 00783826
randall.christian@bowmanandbrooke.com

**Jonathan L. Smith**
Federal ID No. 3632192
Texas Bar No. 24088436
jonathan.smith@bowmanandbrooke.com

**DATE: 01/05/2026**

/s/   Jose M. Gonzalez, Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

15