# EXHIBIT A

# PRELIMINARY EXPERT-INFORMED STATEMENT

JOSE M. GONZALEZ

October 24, 2025

*Gonzalez v. International Medical Devices, Inc., et al*., Case No. 1:24-cv-00982-DAE (W.D. Tex.)

*(For Filing as Plaintiff's Preliminary Expert Disclosure under FRCP 26(a)(2)(C))*

### NOTE: Purpose of Preliminary Disclosure

This preliminary expert-informed statement is provided under Federal Rule of Civil Procedure 26(a)(2)(C) to preserve my right to supplement and file a full expert report once the underlying discovery materials— including FDA submission files, labeling histories, and device-history records—are produced. It summarizes factual and regulatory information available as of this date and will be *promptly* expanded upon complete receipt of the underlying records.

## I.    Background of Review

This statement is prepared by Jose M. Gonzalez, the plaintiff in Gonzalez v. International Medical Devices, Inc., et al., Case No. 1:24-cv-00982-DAE (W.D. Tex.). I submit this preliminary report to summarize regulatory findings developed through a paid consultation with Dr. Joshua Sharlin, PhD, and insights obtained during a brief professional interview with Ms. Denise Holliday-Capwell, each of whom provided guidance on FDA device-clearance boundaries and promotional compliance.

Dr. Sharlin furnished two datasets from the FDA's MAUDE system identifying 120 adverse-event reports involving penile implants manufactured by International Medical Devices, Inc. He confirmed in writing that these files contained the narratives and related variables for all reports of possible relevance. He advised that reviewing those reports would help determine whether similar events had been observed in other patients and whether a broader manufacturer pattern existed.

In a subsequent phone consultation, Dr. Sharlin explained that a review of the FDA 510(k) submission materials—including intended-use statements, summaries, and labeling—would enable him to determine whether submissions prepared or referenced by Dr. Elist or IMD differed from the clearance ultimately granted. He emphasized that access to those submission files, whether obtained through RQM+ or discovery, would materially inform any regulatory opinion on the intended-use boundaries of the devices involved.

During a brief professional interview, Ms. Holliday-Capwell confirmed that under FDA law, any manufacturer promotion, advertising, or labeling that deviates from a device's cleared intended use constitutes misbranding in violation of the Federal Food, Drug, and Cosmetic Act.

Both experts emphasized that each 510(k) submission stands on its own, and that even minor design or labeling changes triggering a new clearance must be marketed solely for that specific cleared indication. A manufacturer cannot apply a broader clearance to earlier or narrower models for which no such intended-use approval exists.

## II.     FDA Regulatory Framework

The FDA's 510(k) clearance process governs premarket notification of medical devices. Relevant provisions include:

- 21 C.F.R. § 807.81(a)(3): A new 510(k) is required when a change 'could significantly affect the safety or effectiveness of the device or the intended use.'

- 21 U.S.C. § 352(a) and (f): Device labeling must not be false or misleading as to intended use.

- 21 C.F.R. § 801.4: Defines 'intended use' by the manufacturer's objective intent, as shown by statements, advertising, and circumstances.

- FDA Guidance, 'Deciding When to Submit a 510(k) for a Change to an Existing Device' (October 25, 2017), available at https://www.fda.gov/media/99812/download, states that changes to intended use require a new 510(k).

- 21 U.S.C. § 331(a): Prohibits introducing or delivering into interstate commerce any misbranded or adulterated device.

## III.     Findings from Consultation and FDA Records

### 1.     FDA 510(k) Comparison

- K162624 – Cleared March 2017
  Device: Pre-Formed Penile Silicone Block
  Indication: Cosmetic correction of soft-tissue deformities of the penis.
  Role: Served as the predicate device for subsequent submissions.
  FDA record:
  https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K162624

- K181387 – Cleared January 29 2019
  Device: Pre-Formed Penile Silicone Block
  Submitted by: International Medical Devices, Inc. (Allison Komiyama, PhD, RAC, consultant).
  Indication: Cosmetic correction of soft-tissue deformities; identical dimensions, materials, and technological characteristics as predicate K162624.
  FDA record:

https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K181387

- K220760 – Cleared May 13 2022
  Device: Himplant Family of Penile Silicone Blocks
  Indication: Augmentation, reconstructive, and cosmetic surgery of the penis;
  provides cosmetic augmentation for aesthetic purposes.
  Relation: Described as identical in dimensions, design, materials, and
  technological characteristics to predicate K181387.
  FDA record:
  https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K220760

## 2. Surgical timing and device identifiers

My surgery was performed on August 2, 2022, and documented as elective penile enhancement. The IMD order form (Bates 000001–000002) shows a shipment to 12201 Renfert Way, Suite 120, Austin, TX requested for July 18, 2022, submitted by Greg Hamburger.

IMD's complaint record for my device (Lot 896436) identifies the product as "Himplant, X-Large, Semi-Soft" and lists a UDI beginning B097IMD009XL180132. I am not drawing any conclusion from that numeric string about which 510(k) applies.

Separately, FDA records reflect two different clearances with distinct indications—K181387 (2019) describing use for cosmetic correction of soft-tissue deformities, and K220760 (May 13, 2022) describing cosmetic augmentation/aesthetic purposes. My pre-operative notes (Bates 000039–000040) state "no penile deformities." Determining which clearance governed the specific unit implanted will require manufacturer records (e.g., UDI-DI/PI cross-walk, labeling revision history, and Device History Record) to be produced in discovery.

## 3. Marketing and pre-surgical communications

Prior to surgery, I received emails from an IMD consultant known as "Ray" (Bates 000015–000020) describing size increase and aesthetic improvement and not referencing deformity correction. Under 21 C.F.R. § 801.4, statements in labeling and

promotion are part of the evidence the FDA uses to assess a manufacturer's objective intent for a device's intended use.

**4. Post-market data reviewed**

Through a paid consultation, Dr. Joshua Sharlin provided two datasets extracted from FDA's MAUDE system identifying 120 reports associated with penile implants manufactured by IMD. The narratives he compiled include recurring complications such as shortening, fibrosis, pain, infection, and explantation. These reports correspond to my postoperative experience and show that similar events had been recorded in FDA's database before and after my procedure.

## IV. Regulatory Provenance of the Cleared Models

The FDA 510(k) submission identified as K181387 was prepared by Allison Komiyama, PhD, RAC on behalf of International Medical Devices, Inc. The summary filed December 19, 2018, described the Pre-Formed Penile Silicone Block as having identical dimensions, the same indications for use, and the same design as predicate device K162624, cleared for cosmetic correction of soft-tissue deformities. It stated that the implant "is contoured at the surgeon's discretion to create a custom implant." FDA's clearance letter dated January 23, 2019, confirmed substantial equivalence for that intended use—cosmetic correction of soft-tissue deformities of the penis.

A later submission, K220760, was filed May 9, 2022, and cleared May 13, 2022. In that submission, the applicant again represented that the device possessed identical dimensions, design, materials, and technological characteristics as the predicate K181387, but expanded the described use:

"The subject and predicate devices have the same intended use, as both are intended to be implanted in the penis as a space-occupying substance in cosmetic surgeries. … The device is intended for use in augmentation, reconstructive, and cosmetic surgery. When used in augmentation procedures, the device provides cosmetic augmentation of the penis and is intended for aesthetic purposes."

These FDA records show the chronological evolution of IMD's clearances—first for deformity correction (K181387) and later adding an explicit indication for aesthetic augmentation (K220760)—while both filings describe devices of the same physical design.

## V.     FDA Position on Multiple Clearances

Manufacturers may possess multiple 510(k) clearances for similar designs, but each clearance is limited to its stated indication. FDA explicitly prohibits marketing across indications unless separately cleared. The 2017 FDA Guidance explains: "*A new intended use requires submission of a new 510(k). A manufacturer may not market the modified device for any use that has not been cleared.*" (FDA Guidance, supra, at 6–7).

FDA's Compliance Policy Guide § 300.600 ([https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-300600-promoting-unapproved-new-uses-approved-drugs-devices](https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-300600-promoting-unapproved-new-uses-approved-drugs-devices)) further states: 'Labeling or advertising that creates an intended use not consistent with the clearance renders the device misbranded under section 502(a) of the Act.'

## VI.     Summary and Declaration

Based on my review of FDA 510(k) records, the MAUDE datasets provided by Dr. Sharlin, my paid consultation with him, my professional interview with Ms. Holliday-Capwell, and the IMD discovery materials produced to date, the records show that:

1. IMD obtained sequential FDA clearances—first for correction of soft-tissue deformities (K181387) and later adding an indication for aesthetic augmentation (K220760).
2. The promotional and intake materials I received described aesthetic enhancement and did not reference deformity correction.
3. Which clearance applied to the device implanted in my procedure remains a factual question pending manufacturer production of labeling and device-history records.

I provide this statement to summarize factual and regulatory information reviewed with experts; it is not offered as a legal conclusion or opinion on liability.

I declare that the foregoing is provided in good faith compliance with Fed. R. Civ. P. 26(a)(2)(C) and subject to supplementation under Rule 26(e).

I further declare under penalty of perjury that the foregoing is true and based on my own knowledge and the professional consultations described above.

Executed on October 24, 2025
/s/ Jose M. Gonzalez
Laredo, Texas
