UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOSE M. GONZALEZ,<br>  Plaintiff,<br><br>vs.<br><br>INTERNATIONAL MEDICAL DEVICES, et al.<br>  Defendants. | §<br>§<br>§<br>§<br>§  NO: **1:24-cv-00982-DAE**<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT DEFENDANTS' PROPOSED EXPERT TESTIMONY OF DENISE HOLLIDAY

Defendants' opposition confirms the core problem: Ms. Holliday's report does not analyze the deception issues in this case. Instead, Defendants attempt to reframe Plaintiff's claims into a narrow, post-hoc regulatory trivia question ("was there an FDA clearance by August 2022?") and then declare victory. That is not what Plaintiff pleaded, not what discovery concerns, and not what Rule 702 permits.

Defendants' response relies on (1) a technicality (timing), (2) a deliberately narrowed issue statement, and (3) selective quotation of Plaintiff's preliminary disclosure to bootstrap admissibility. None cures the Rule 702 defects.

**I. The "timing" objection is a distraction and shows no prejudice.**

Defendants argue Plaintiff's Rule 702 motion was filed six days after the Scheduling Order deadline. That argument ignores the procedural record in this case.

Within the same time period, Defendants sought and obtained multiple unopposed extensions from this Court. On January 13, 2026, Defendants moved to continue the dispositive motion deadline (Dkt. No. 65), citing scheduling issues, and the Court granted that request,

1

extending the deadline to January 23, 2026. On January 14, 2026, the Court likewise granted Defendants' unopposed motion for extension of time to respond to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 64), extending Defendants' response deadline to January 28, 2026. Both extensions were granted notwithstanding the Scheduling Order and without any finding of prejudice.

Defendants' own reliance on schedule flexibility forecloses their attempt to invoke rigid enforcement of the Scheduling Order to bar Rule 702 review based on a brief, non-prejudicial delay. Courts routinely reject such selective reliance on scheduling provisions, particularly where the delay is minimal and the opposing party has obtained comparable or greater relief from the schedule. *Geiserman v. MacDonald*, 893 F.2d 787, 790–91 (5th Cir. 1990).

Defendants identify no prejudice. They did not notice Ms. Holliday for deposition, have not relied on her opinions in any dispositive motion, and no trial date has been set. In any event, Rule 702 imposes a substantive gatekeeping obligation that applies regardless of minor timing disputes. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). A short, non-prejudicial delay does not transform otherwise inadmissible expert testimony into admissible evidence.

II. **Defendants' "central issue" framing is incomplete and does not match the pleaded claims.**

Defendants assert the "central issue" is whether the Penuma device was FDA-cleared for cosmetic augmentation at the time of Plaintiff's surgery. That reframing does not match the claims pleaded in the Amended Complaint or the factual disputes the Court has already recognized. Plaintiff alleges a broader deceptive marketing and omission scheme, including coordinated

2

advertising, omission of limiting indications, inducement of non-indicated consumers, and false or misleading representations about FDA status. See Am. Compl. ¶¶ 1–7, 31–33, 73–118.

As pleaded and as recognized in the Order denying dismissal, Plaintiff's claims turn on multiple factual issues that Ms. Holliday does not analyze:.

A. **What Defendants marketed to consumers (including Plaintiff), and when.**

Plaintiff alleges that since at least 2017 Defendants marketed Penuma as a cosmetic enlargement device to men with healthy, normal penises through websites and direct-to-consumer advertising. See Am. Compl. ¶¶ 1–2, 33–36, 44–48; Figures 1–10 (pp. 26–32). Plaintiff's PSJ further details that this marketing predated surgery by years and routed Plaintiff into Defendants' intake funnel. See PSJ at pp. 2–3 (§ I.A). The Court acknowledged these allegations in denying dismissal. See Order Denying Dismissal at pp. 2–33.

B. **Whether Defendants omitted limiting indications ("soft tissue deformities") while promoting cosmetic enhancement.**

Plaintiff alleges Defendants promoted Penuma as "FDA-cleared" for cosmetic enhancement while omitting that FDA clearance was limited to "cosmetic correction of soft tissue deformities." See Am. Compl. ¶¶ 2, 16–17, 73–76, 92–99, 114–118. This omission theory is central to Plaintiff's DTPA/TCPA theories under §§ 17.46(b)(5), (7), and (9). See Am. Compl. ¶¶ 146–161. The Court accepted this theory as plausibly pleaded. See Order Denying Dismissal at pp.. 3, 15–16.

C. **Whether Defendants' marketing and intake funnel induced a non-indicated consumer to undergo surgery.**

Plaintiff alleges he had a normal, healthy penis, no soft tissue deformity, and would not have undergone surgery but for Defendants' advertising, intake materials, and consultation

representations. See Am. Compl. ¶¶ 34–43, 49–55, 73–76. Plaintiff's PSJ reiterates these inducement allegations. See PSJ at pp. 2–3 (§ I.A), 6–7 (§ I.C). Plaintiff's Preservation Injunction motion also addresses Defendants' failure to produce marketing and intake ESI relevant to these issues. See Preservation Injunction Motion at pp. 4–6.

**D. Whether Defendants' current "clearance" narrative is being retrofitted through device-listing and UDI records rather than contemporaneous labeling and device-history records.**

Plaintiff alleges Defendants' FDA clearance was repeatedly limited to deformity correction and later misrepresented to access a broader cosmetic market. See Am. Compl. ¶¶ 82–118. Plaintiff's PSJ identifies a factual dispute regarding which device iteration and labeling governed Plaintiff's surgery. See PSJ at pp. 6–7 (§ I.C). The Court expressly held the applicable device iteration presents a factual question. See Order Denying Dismissal at p. 16. Plaintiff's Preservation Injunction motion further addresses post-hoc modification of complaint/UDI records and the absence of contemporaneous device-history documentation. See Preservation Injunction Motion at pp. 1–2, 4–5, 7–8.

Ms. Holliday's report addresses none of these pleaded issues. She does not analyze Defendants' consumer-facing advertising, omission-based misrepresentations, intake and inducement practices, or the integrity of contemporaneous labeling and device records. Instead, she offers a narrow, retrospective regulatory narrative that does not "help the trier of fact to understand the evidence or to determine a fact in issue" within the meaning of Rule 702(a).

**III.   Ms. Holliday's opinion is an impermissible legal conclusion dressed up as "regulatory certainty."**

Ms. Holliday was retained to evaluate whether the device at issue "was misbranded in violation of" the Federal Food, Drug, and Cosmetic Act, and her ultimate conclusion states: "The medical device was not misbranded in violation of the [FDCA]." That conclusion is not a technical or factual opinion—it is a legal determination.

Whether conduct constitutes "misbranding" under the FDCA is a question of law governed by statutory and regulatory standards. It is not a matter of specialized scientific or technical knowledge that may be resolved by expert testimony. Although Defendants attempt to recast Ms. Holliday's conclusion as an opinion that the device was "cleared for cosmetic augmentation," her report repeatedly frames the issue and the conclusion in terms of legal compliance and violation.

Rule 702 does not permit an expert to tell the jury that a party did or did not violate federal law. At minimum, Ms. Holliday's testimony must be limited to identifying the FDA records she reviewed and describing, without legal characterization or compliance conclusions, what those records state. She may not opine that Defendants did not "misbrand" the device, did not "violate" the FDCA, or otherwise complied with governing law.

**IV.   Defendants' "methodology" argument proves the unreliability problem—it doesn't solve it.**

Defendants claim Ms. Holliday's methodology is reliable because she (a) took a UDI/DI string, (b) queried AccessGUDID, and (c) treated the resulting list of premarket submission numbers as proof of clearance scope.

That is exactly the problem. A GUDID device record associating multiple premarket submissions does **not** answer the central factual dispute here: **which labeling/indications governed the unit implanted in Plaintiff**, what the accompanying labeling said at the time, and what Defendants promoted to Plaintiff pre-surgery. Those questions require the manufacturer's

5

labeling revision history, DHR/DMR crosswalk, packaging/IFU versions, and distribution records—i.e., the very materials Plaintiff has been seeking in discovery.

Even Ms. Holliday's own Table 1 shows the defect in Defendants' "intended use is identical" narrative: K181387 is described as deformity-correction, while K220760 adds cosmetic augmentation.

Treating those as "identical intended use" is not methodology—it is ipse dixit.

## V. Defendants' reliance on Plaintiff's preliminary disclosure is cherry-picking and backfires.

Defendants attach Plaintiff's preliminary expert-informed statement (Exhibit A) and claim it supplies the "assumption" for the UDI/DI and therefore validates Ms. Holliday. This is misleading for two reasons:

1. Plaintiff's statement expressly does the opposite of Holliday. It says the applicable clearance for the implanted unit remains a factual question pending manufacturer records (UDI/DI/PI crosswalk, labeling revision history, and device history records).

2. Plaintiff's statement is a Rule 26(a)(2)(C) placeholder "to preserve my right to supplement," not an expert report that resolves the dispute.

Defendants cannot convert Plaintiff's preservation disclosure into a foundation to admit defense legal conclusions.

Defendants' tactic highlights the weakness of Ms. Holliday's work: rather than show she evaluated advertising, inducement, or the actual marketing record, Defendants try to bootstrap admissibility from a preliminary disclosure that explicitly says the key factual records are missing.

**VI.     The Court should exclude or, at minimum, strictly limit Ms. Holliday's testimony.**

For these reasons, Defendants have not shown that Ms. Holliday's opinions (a) fit the issues, (b) are reliably derived from sufficient facts and data, or (c) avoid legal conclusions.

If the Court declines to exclude her testimony in full, Plaintiff respectfully requests an order limiting Ms. Holliday to:

- identifying the FDA database entries she reviewed;
- describing, without legal conclusions, what those entries state; and
- prohibiting any opinion that (i) Defendants did not misbrand/violate the FDCA, (ii) Defendants' marketing was compliant, or (iii) Plaintiff's DTPA theory fails.

**CONCLUSION**

Defendants' response confirms Ms. Holliday is being offered to provide a legal-compliance narrative untethered to the marketing and inducement facts at the heart of Plaintiff's claims. Rule 702 does not permit that. Plaintiff respectfully requests that the Motion be granted, or alternatively that Ms. Holliday's testimony be strictly limited as set forth above.

Respectfully Submitted this 16th day of January 2026.

**Jose M. Gonzalez,** Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

7

## CERTIFICATE OF SERVICE

  I, Jose M. Gonzalez, Plaintiff pro se, do hereby certify that on the 16th day of January 2026, a true and correct copy of the foregoing:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT DEFENDANTS' PROPOSED EXPERT TESTIMONY OF DENISE HOLLIDAY**

via email to:

  **Defendants**: International Medical Devices, Inc. ("IMD"); Menova International, Inc., ("Menova"); James J. Elist, M.D., a Medical Corporation; and, Dr. James Elist is an individual residing in Beverly Hills, California, as being represented by:

| BOWMAN AND BROOKE LLP | Mark J. Dyer |
|---|---|
| **Randall L. Christian** | State Bar No. 06317500 |
| Federal ID No. 15935 | dyer@mdjwlaw.com |
| Texas Bar No. 00783826 | |
| randall.christian@bowmanandbrooke.com | **Stephen D. Henninger** |
| | State Bar No. 00784256 |
| **Jonathan L. Smith** | henninger@mdjwlaw.com |
| Federal ID No. 3632192 | |
| Texas Bar No. 24088436 | 9111 Cypress Waters Blvd., Suite 250 |
| jonathan.smith@bowmanandbrooke.com | Dallas, Texas 75019 |
| | (214) 420-5500 |
| | (214) 420-5501 (telecopier) |

**DATE: 01/16/2026**

/s/ Jose M. Gonzalez, Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com