UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOSE M. GONZALEZ, | § § § § | |
| *Plaintiff*, | | |
| v. | § § § § § § § § | CASE NO. 1:24-cv-00982-DAE |
| INTERNATIONAL MEDICAL DEVICES, INC., *et al.*, | | |
| *Defendants*. | | |

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants International Medical Devices, Inc. ("IMD"), Menova International, Inc., James J. Elist M.D., a Medical Corp., and James Elist, M.D. ("Dr. Elist") move, on the following grounds, for summary judgment on all claims asserted in the Amended Civil Complaint ("FAC"):

## INTRODUCTION

Plaintiff wanted a larger penis, so, after consulting with Board-certified urologist, Dr. Bryan Kansas, he elected to undergo surgical placement of a Penuma penile implant. Plaintiff, sadly, experienced known complications following his receipt of the Penuma for which he now seeks to hold Defendants liable under the Texas Deceptive Trade Practice Act (the "DTPA"). Plaintiff claims Defendants violated the DTPA by: (i) representing the Penuma to be FDA-cleared for cosmetic augmentation of healthy penises when it was actually cleared for cosmetic correction of soft tissue deformities of the penis (the "Misrepresentation Claim"); (ii) failing to disclose that the Penuma was cleared by FDA for the correction of soft tissue deformities (the "Failure-to-Disclose Claim"); and (iii) failing to adequately warn of the risks associated with the Penuma (the "Failure-to-Warn Claim"). Though these claims escaped dismissal under Rule 12(b)(6), they cannot escape summary judgement for the following reasons:

33176669

*First*, Plaintiff's Misrepresentation Claim fails because the Penuma he recieved was, in fact, cleared by FDA for "cosmetic augmentation of the penis … for cosmetic purposes." Though the Court declined to dismiss the Misrepresentation Claim on this basis under Rule 12(b)(6), it did so only because Plaintiff created a factual dispute by alleging, in response to Defendants' motion to dismiss, that the device he received was not among the "iterations" of the Penuma cleared for cosmetic augmentation of healthy penises.[1] Plaintiff cannot, however, salvage his Misrepresentation Claim from summary judgment with mere allegations. He must, rather, present evidence sufficient to raise a triable issue of fact as to the scope of the device's FDA clearance, which he cannot do. Moreover, even if the Penuma he received was cleared by FDA only for soft tissue deformity correction, the Misrepresentation Claim would still fail because Plaintiff has no evidence that any Defendant ever represented otherwise.

*Second*, Plaintiff's Failure-to-Disclose Claim also fails because the Penuma he received was, in fact, cleared by FDA for cosmetic augmentation of penises for cosmetic purposes. Moreover, even if the device was cleared by FDA solely for correction of soft-tissue deformities, the claim would fail because Plaintiff cannot raise a fact issue on the element of intent.

*Third*, Plaintiff's Failure-to-Warn Claim fails because, pursuant to the learned intermediary doctrine, Defendants duty to warn of the risks associated with the device ran not to Plaintiff but to his prescribing physician, and Dr. Kansas testified to being fully aware, when he prescribed the Penuma to Plaintiff, that the associated risks included every complication Plaintiff allegedly experienced. This testimony conclusively negates the causation element of Plaintiff's Failure-to-Warn Claim.

---

[1] *See* Order Denying Def.s' Mot. to Dismiss, ECF NO. 30, at 16.

33176669

I. STATEMENT OF UNDISPUTED MATERIAL FACTS

A. Plaintiff's acquisition of the Subject Device.

Plaintiff first consulted Dr. Kansas regarding the Penuma penile implant, a prescription medical device, on May 19, 2022. Exhibit A, Kansas Dep. at 21:24-22:22; Exhibit B, Pl.'s Dep. at 85:10-25. Dr. Kansas advised Plaintiff of the risks associated with the device and implantation procedure, including the risks of penile retraction, penile deformity, penile shortening, loss of sensation, pain, swelling, scarring, and need for additional surgical revision. Dr. Kansas provided these warnings to Plaintiff both orally and in writing via an informed consent Plaintiff executed on July 29, 2022. Exhibit A, Kansas Dep. at 34:16-37:5, 40:6-45:3, 46:5-24; Exhibit C, Pl.'s Informed Consent; Exhibit B, Pl.'s Dep., at 86:1-89:2. After determining that Plaintiff was an appropriate candidate for the device, Dr. Kansas prescribed the Penuma implantation procedure and Plaintiff elected to proceed. On August 2, 2022, Dr. Kansas performed the procedure, and Plaintiff received the device. Exhibit D, Operative Report; Exhibit B, Pl.'s Dep. at 23:15-18; Exhibit A, Kansas Dep. at 18:22-19:15, 86:9-87:5.

B. Subject Device's FDA-cleared Indications for Use.

The Penuma is a prescription only, Class II medical device cleared for domestic distribution by FDA through its 510(k) premarket notification system. Exhibit E, Declaration of Denise Holliday ("Holliday Dec.") at ¶ 5; Exhibit A, Kansas Dep. at 18:22-19:15.

Using the Unique Device Identification number assigned to the Penuma implant Plaintiff received (the "Subject Device"), Denice Holliday, Defendants' medical device and regulatory expert, queried FDA's online database to determine the 510(k) Premarket Submission Numbers under which it was cleared. Exhibit E, Holliday Dec. at ¶ 6. Ms. Holliday then queried FDA's "510(k) Premarket Notification" online database for each of the Premarket Submission Numbers

3

identified to access and evaluate the submissions to determine the scope of the Subject Device's FDA-clearance (*i.e.*, its "Indications for Use") and the dates on which those clearances applied. Exhibit E, Holliday Dec. at ¶ 7.

Based on this analysis, Ms. Holliday testifies that from January 23, 2019, when FDA completed its review of 510(k) Submission No. K181387, through May 12, 2022, the Subject Device was cleared by FDA "for use in the cosmetic correction of soft tissue deformities." Exhibit E, Holliday Dec. at ¶ 8.a. Then, on May 13, 2022, upon completion of its review of 510(k) Submission No. K220760, FDA updated the Subject Device's cleared Indications for Use to also include "cosmetic augmentation of the penis … for cosmetic purposes." Exhibit E, Holliday Dec. at ¶ 8.b.[2]

Thus, Ms. Holliday, testifies that on August 2, 2022, the day it was received by Plaintiff, the Subject Device was cleared by FDA for "cosmetic augmentation of the penis … for cosmetic purposes" and had been since before Plaintiff first consulted with his prescribing physician. Exhibit E, Holliday Dec. at ¶ 10. Ms. Holliday's testimony is uncontroverted.

## II. ARGUMENT AND AUTHORITIES

Defendants' uncontroverted expert evidence establishes that the Subject Device was cleared for cosmetic augmentation of healthy penises and, thus, forecloses Plaintiff's Misrepresentation Claim and Failure to Disclose Claims, while Dr. Kansas's testimony conclusively negates the causation element of Plaintiffs' Failure-to-Warn Claim. For these, and

---

[2]Ms. Holliday further testifies that apart from updating the Penuma's Indications of Use, there were no other changes whatsoever between the device as cleared under K181387 and as cleared under K220760. Exhibit E, Holliday Dec. at ¶ 9. That is, the device as cleared under K22070 "has identical dimensions, design, materials, and technological characteristics" as does the device as cleared under K181387. E, Holliday Dec. at ¶ 9.

the *additional* reasons discussed below, the Court should grant this Motion and the summary judgment to which Defendants are entitled.

### A. Legal Standard.

Summary judgment is appropriate when the movant shows that there is no genuine dispute of a material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Howell v. Town of Ball*, 827 F.3d 515, 521-22 (5th Cir. 2016). A defendant moving for summary judgment may satisfy its burden of establishing the absence of a genuine issue of fact by submitting evidence that negates a material element of the plaintiff's claim or by showing that there is no evidence to support an essential element of the plaintiff's claim. *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 768 (N.D. Tex. 2003), *aff'd* 2008 WL 3876307 (5th Cir. Aug. 19, 2008); *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010).

### B. Defendants' evidence negates an element of Plaintiff's Misrepresentation Claim, and even if not, Plaintiff has no evidence to support it.

Plaintiff's Negligent Misrepresentation claim is premised entirely on the proposition that Defendants misrepresented the scope of the Subject Device's FDA clearance by claiming it encompassed "cosmetic augmentation of the penis for aesthetic purposes, when it was only cleared for cosmetic correction of soft-tissue deformities." Exhibit B, Pl.'s Dep. at 22:15-20, 55:25-56:13; FAC, ECF No. 23, at 5, 23. Defendants' expert evidence, however, conclusively establishes that the Subject Device was cleared by FDA for "cosmetic augmentation of the penis … for aesthetic purposes," since before Plaintiff first met with the physician who prescribed the Subject Device. Defendants are, therefore, entitled to summary judgment on Plaintiff's Misrepresentation Claim. *See supra* Part I.B. (citing Exhibit E, Holliday Dec.).

Moreover, even if the FDA's clearance of the Subject Device was limited to the cosmetic correction of soft-tissue deformities, Defendants would still be entitled to summary judgment

5

33176669

because Plaintiff has no evidence that Defendants ever represented otherwise. *See* Exhibit B, Pl.'s Dep., at 25:3-22 (testifying that article in GQ Magazine mentioned only that the Penuma was cleared by FDA without elaboration),[3] 27:9-28:3 (confirming the absence of such representations in e-correspondence dated December 2016), 51:2-14 (testifying to inability to point to any documentary evidence wherein Defendants made representations concerning the scope of the device's FDA-clearance), 52:9-25 (testifying that no such representations were ever orally made by Defendants), 54:9-55:3 (same), 56:14-57:10 (same).

Indeed, Plaintiff identified only one instance where any Defendant discussed the scope of the Penuma's FDA clearance. In March 2022, just a couple months before the May 2022-to-August 2022 transaction window, Plaintiff watched a YouTube lecture concerning the Penuma given by Dr. Elist to an audience of urologists. Exhibit B, Pl.'s Dep. at 30:14-31:8, 32:7-33:2. Of course, any representations made during such a lecture could not be construed as having been made to Plaintiff "in the conduct of trade or commerce." *See* Tex. Bus. & Comm. Code § 17.46. Nevertheless, it constitutes the sole instance in evidence of a Defendant commenting on the scope of the Penuma's FDA clearance; moreover, Plaintiff claims to have watched it and to have read a transcript of it multiple times. Exhibit B, Pl.'s Dep. at 42:1-11.  In that lecture, Dr. Elist stated:

> we got the first fda approval and this is the only and the first fda approved
> 18:34
> subcutaneous penile process we got the first fdm 2004 we got the
> 18:39
> second fdn 2016. **and we got the third fdm 2019 and now we are approved for the**
> 18:47
> **penile enhancement or actually we are approved for the**
> 18:52
> **soft tissue deformity of the penis which is general okay** so this is something in
> 18:58

ECF No. 28-3 at 20 (emphasis added).

---

[3] Defendants note, however, that they have no liability for any misrepresentations that may be contained in this or any other article published by third-parties.

Thus, in the sole instance where the scope of the Subject Device's FDA clearance is discussed by a Defendant, the Defendant, Dr. Elist, expressly states that it extends to issues of soft-tissue deformities. *Id*. This statement, which was made in February 2022 and received by Plaintiff in March 2022, is, of course, consistent with Ms. Holliday's assessment that from January 2019 to May 12, 2022, the device was FDA cleared for cosmetic correction of soft-tissue deformities. Exhibit E, Holliday Dec. at ¶ 8 (a-b). There is, therefore, simply no evidence that Defendants made any misrepresentations to Plaintiff concerning the scope of the device's FDA clearance and certainly no evidence that any such misrepresentations were made near or within the timeframe in which Plaintiff was consulting with Dr. Kansas concerning his possible receipt of the Subject Device (*i.e.*, between 5/2022 – 8/2022).

For all these reasons, there is no triable issue of fact as to any element of Plaintiffs' Misrepresentation Claim, and Defendant is entitled to judgment as matter of law on the same.

**C. Defendants' evidence negates an essential element of Plaintiff's Failure-to-Disclose Claim, and Plaintiff has no evidence to support another element.**

To establish his DTPA-based Failure-to-Disclose Claim, Plaintiff must show (1) a failure to disclose material information, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff would not have entered the transaction if the information had been disclosed." *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Here, Plaintiff alleges that Defendants failed to disclose that the Penuma was cleared by FDA solely "for use in the cosmetic correction of soft tissue deformities" and, thus, that he, who had a penis free of soft tissue deformities, was not eligible to receive the Penuma. Exhibit B, Pl.'s Dep. at 22:15-20, 42:12-45:12, 55:4-18. As established above, Defendants' expert evidence negates the first element of this claim because the Subject Device was cleared by FDA for cosmetic

7

augmentation of otherwise healthy penises for cosmetic purposes, *see supra* Part I.B. (citing Exhibit E, Holliday Dec. at ¶ 8 (a-b)), and Plaintiff was an appropriate candidate for the device. *See* Exhibit A, Kansas Dep. at 86:9-14.[4] Thus, this claim also fails because it rests on the demonstrably false proposition that the Subject Device was cleared by FDA solely for use in the cosmetic correction of soft tissue deformities and not for cosmetic augmentation of an otherwise healthy penis for cosmetic purposes.

And again, even if FDA's clearance of the Subject Device was limited to the cosmetic correction of soft tissue deformities, Defendants would still be entitled to summary judgment because "mere nondisclosure of material information is not enough to establish an actionable DTPA claim." *Robbins v. Capozzi,* 100 S.W.3d 18, 26 (Tex. App.—Tyler 2002); *Century 21 Real Estate Corp. v. Hometown Real Estate Co.,* 890 S.W.2d 118, 126 (Tex. App.—Texarkana 1994). Plaintiff must also produce evidence, which he does not have, that Defendants withheld the information with the intent to induce him to receive the Penuma. *See, e.g., Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 507 (Tex. App.—San Antonio 2004) (affirming summary judgment on DTPA nondisclosure claim for lack of evidence that "information was withheld with the intent of inducing the consumer to engage in the transaction").[5]

For the reasons stated, Defendants are entitled to judgment as a matter of law on Plaintiff's Failure-to-Disclose Claim.

---

[4] Further, whether to use a prescription product for off-label purposes rests in the permissible discretion of the prescribing physician. *See, e.g.*, *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 692 (2d Cir. 1994) ("[T]he FDA permits doctors to prescribe drugs for 'off-label' uses."); *Washington Legal Foundation v. Kessler*, 880 F. Supp. 26 (D.D.C. 1995); FDA, Compliance Program Guidance Manual, No. 7382.900 "Center for Devices and Radiological Health Consumer Education Program," Part 1, at 7 (Jan. 1992) ("Physicians may use devices for off-label uses (this is considered within the practice of medicine).").

[5] *See also Capozzi,* 100 S.W.3d at 26 (same); *Red Roof Inns, Inc. v. Jolly*, 2011 WL 6288147, at *8-*9 (Tex. App.—Houston (14th Dist. Dec. 15, 2011) (same).

33176669

**D. Dr. Kansas's testimony conclusively negates the causation element of Plaintiff's Failure-to-Warn Claim.**

With respect to his Failure-to-Warn Claim, Plaintiff contends that Defendants failed to adequately warn of the risks associated with the Penuma. In particular, Plaintiff claims that Defendants failed to adequately warn him of the risks of penile retraction, penile shortening, penile deformity, loss of sensation, scarring, swelling, and need to obtain and pay for revision surgeries. Exhibit B, Pl.'s Dep. at 59:25-61:6, 78:17-79:5. As an initial matter, it bears noting that Dr. Kansas expressly warned Plaintiff of all these potential risks, and, in addition to that, Plaintiff executed an informed consent that also required him to sign in confirmation that he was warned of each of these risks. Exhibit A, Kansas Dep. at 34:16-37:5, 40:6-45:3, 46:5-24, 86:9-87:5; Exhibit C, Pl.'s Informed Consent; Exhibit B, Pl.'s Dep., at 86:1-89:2.

Ultimately, however, Plaintiffs' Failure-to-Warn Claim fails because Defendants had no duty under Texas law to warn Plaintiff of these or any other alleged risks associated with the Subject Device. Texas courts have adopted the learned intermediary doctrine pursuant to which a prescription medical device manufacturer "'satisfies its duty to warn the end user of its product's potential risks by providing adequate warnings to a "learned intermediary" who then assumes the duty to pass on the necessary warnings to the end user.'" *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 774 (5th Cir. 2018) (quoting *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 142 (Tex. 2012)); *Fearrington v. Boston Sci. Corp.*, 410 F. Supp. 3d 794, 801 (S.D. Tex. 2019) ("Under the learned intermediary doctrine a medical device manufacturer satisfies its duty to warn by providing adequate warnings to the prescribing physician.").

The learned intermediary doctrine applies to all claims premised on a failure to warn including those asserted under the DTPA. *See Centocor*, 372 S.W.3d at 168 (holding that learned

intermediary doctrine applies to all claims premised on a failure to warn, including DTPA claims: "'If the [learned intermediary] doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such as a violation of the DTPA …, then the doctrine would be rendered meaningless'") (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 708 (E.D. Tex. 1997), *aff'd*, 165 F.3d 374 (5th Cir. 1999) (affirming trial court's application of learned intermediary doctrine to DTPA claims)); *Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 94 (Tex. App.—Texarkana 2000 (same).

To prevail on his Failure-to-Warn Claim under the learned intermediary doctrine, Plaintiff must show that (1) the warnings given were defective, and (2) the failure to warn was a producing cause of the injury." *Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008). To establish that the alleged failure to warn was a producing cause of his alleged injuries, Plaintiff must produce evidence establishing that had Dr. Kansas received adequate warnings, he would have recommended different treatment or given Plaintiff counsel that would have led him to withhold consent." *See, e.g.*, *Dubay v. Bos. Sci. Corp.*, 2021 WL 3771769, at *1 (N.D. Tex. Jan. 21, 2021) (quoting *Fearrington*, 410 F. Supp. 3d at 801). Plaintiff has no such evidence. Plaintiff has produced no expert to opine as to the adequacy of the warnings Dr. Kansas was provided, nor does he have any evidence that had different warnings been provided it would have altered Dr. Kansas's prescribing decisions or prompted him to provide different warnings to Plaintiff.

Moreover, Dr. Kansas testified, at length, to having been fully aware, when he prescribed the Subject Device to Plaintiff, that receipt of the same carried the risk of every complication Plaintiff suffered, and that he knows of no new information that would have changed his prescribing decisions. Exhibit A, Kansas Dep. at 34:16-37:5, 40:6-45:3, 46:5-24, 47:24-48:16,

86:15-87:5. Dr. Kansas's testimony conclusively negates the causation element of Plaintiffs' Failure-to-Warn Claim.

Thus, Plaintiff cannot present any evidence in support of the causation element of his Failure-to-Warn Claim, and, in any event, causation is conclusively negated by the evidence that is in record, *i.e.*, Dr. Kansas's testimony.

## Conclusion

For the reasons provided herein, Defendants respectfully request that this motion be granted, and that Defendants be awarded judgment as a matter of law as to all claims asserted against them.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Jonathan L. Smith*
    Randall L. Christian
    Federal ID No. 15935
    Texas Bar No. 00783826
    randall.christian@bowmanandbrooke.com
    Jonathan L. Smith
    Federal ID No. 3632192
    Texas Bar No. 24088436
    jonathan.smith@bowmanandbrooke.com
    2901 Via Fortuna Drive, Suite 500
    Austin, Texas 78746
    Tel: (512) 874-3800
    Fax: (512) 874-3801

*Attorneys for Defendants*

**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

By: */s/ Mark J. Dyer*
    **MARK J. DYER**
    State Bar No. 06317500
    dyer@mdjwlaw.com
    **STEPHEN D. HENNINGER**

11

State Bar No. 00784256
henninger@mdjwlaw.com
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
(214) 420-5500
(214) 420-5501 (telecopier)

**ATTORNEYS FOR DEFENDANTS JAMES J. ELIST M.D., A MEDICAL CORPORATION AND DR. JAMES ELIST**

### CERTIFICATE OF SERVICE

I certify that the foregoing instrument and all attachments thereto was filed with the Clerk via the ECF system which will give notice of the filing to Plaintiff, who has registered as an ECF user.

*/s/ Jonathan L. Smith*
Jonathan L. Smith

33176669