UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE M. GONZALEZ,<br>Plaintiff,<br><br>*vs.*<br><br>INTERNATIONAL MEDICAL DEVICES, INC. ("IMD"); MENOVA INTERNATIONAL, INC., ("MENOVA"); JAMES J. ELIST, M.D., A MEDICAL CORPORATION; AND DR. JAMES ELIST,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No: **1:24-cv-00982-DAE** |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENTON ON FAILURE TO DISCLOSE**

Comes now Plaintiff Jose Gonzalez in reply to Defendants'[1] response to his Motion for Partial Summary Judgment. Plaintiff moved for partial summary judgment seeking a narrow ruling on three objective nondisclosure issues. In their response, Defendants effectively concede the first two issues and do not materially dispute the third as to the consumer-facing materials identified in Plaintiff's motion. Rather than contesting the absence of disclosure or their knowledge of the FDA limitation, Defendants attempt to narrow the scope of relief by redefining the "transaction period" and carving away undisputed facts central to Plaintiff's inducement. As explained below, Defendants' concessions, coupled with the undisputed documentary record, confirm that partial summary judgment is appropriate on the nondisclosure issues presented.

Plaintiff now states the following:

[1] As used herein, "Defendants" refers collectively to International Medical Devices, Inc.; Menova International, Inc.; James J. Elist, M.D., a Medical Corporation; and Dr. James J. Elist, an individual.

## I. Plaintiff's Motion Properly Seeks Partial Summary Judgment Under Rule 56

Plaintiff seeks partial summary judgment under Rule 56 on a narrow and undisputed set of factual issues arising under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.46(b)(24). Plaintiff does not ask the Court to decide intent to induce, producing cause, damages, or remedies. Those issues are properly reserved for the trier of fact.

Rule 56 expressly permits summary judgment on part of a claim and authorizes courts to resolve discrete, objective issues where no genuine dispute of material fact exists. See Fed. R. Civ. P. 56(a), (g). Courts routinely grant partial summary judgment or deem facts established where "only legal consequences flow from undisputed facts." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

Defendants' attempt to recharacterize Plaintiff's motion as something other than a proper Rule 56 motion misunderstands the Rule. Whether styled as partial summary judgment or as facts deemed established under Rule 56(g), the operative question is the same: are these facts genuinely disputed? As shown below, they are not.

## II. Plaintiff Met His Initial Rule 56 Burden; Defendants Offered No Contrary Evidence

Plaintiff identified the consumer-facing materials used to market, screen, approve, and direct him toward the Penuma procedure and demonstrated that those materials did not disclose the FDA's deformity-only limitation. These materials include Defendants' website content, direct eligibility and referral communications, and public-facing promotional coverage relied upon during Plaintiff's transaction.

That showing satisfies Plaintiff's initial burden under Rule 56. See; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once Plaintiff made that showing, the burden shifted to Defendants to identify specific evidence demonstrating a genuine dispute as to disclosure. *Id*.

Defendants did not do so.

Although Defendants possess access to the same universe of business records, marketing materials, and consumer communications underlying Plaintiff's transaction, they identify no document, communication, or representation disclosing the FDA limitation to Plaintiff during the inducement process. Speculation that other materials might exist does not create a genuine dispute of material fact. See; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III. The Relevant Consumer Transaction Occurred Before May 13, 2022

Defendants' primary opposition depends on redefining the "transaction" to mean the date of surgery. That reframing is unsupported by the record and inconsistent with Texas law governing DTPA failure-to-disclose claims.

Under § 17.46(b)(24), the disclosure duty arises when a seller, with actual knowledge of a material limitation, seeks to induce a consumer into a course of conduct the consumer might not otherwise have entered. The transaction is not limited to the moment of final performance. See; *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 744–45 (Tex. App.—Fort Worth 2005, no pet.).

More specifically:

In *Head v. U.S. Inspect DFW, Inc.,* the plaintiff scheduled a home inspection in reliance on representations made by the service provider, with the inspection itself to occur later. 159 S.W.3d 731, 744–45 (Tex. App.—Fort Worth 2005, no pet.). The defendant argued that no DTPA transaction existed until the inspection was actually performed. The court rejected that framing and held that the transaction began when the consumer scheduled the service and relied on the representations inducing that scheduling, not when performance later occurred. *Id*. The same

reasoning has been applied where consumers took preparatory steps—such as scheduling, submitting information, or otherwise acting in reliance—even if the ultimate service was never completed. See; *McMillan v. Deutsche Bank Nat'l Tr. Co*., No. 05-11-01247-CV, 2012 WL 1515410, at *5 (Tex. App.—Dallas Apr. 30, 2012, no pet.) (mem. op.) (holding transaction began when plaintiffs acted in reliance by undertaking preparatory steps, notwithstanding later events).

A similar conclusion was reached in the medical-services context in *Casey v. Methodist Hospital,* where the plaintiff arranged and scheduled medical services based on representations made prior to treatment. 907 S.W.2d 898, 900–01 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The hospital argued that no actionable transaction occurred until medical treatment was rendered. The court disagreed, holding that the consumer entered the transaction when the services were arranged and accepted, even though treatment occurred later. *Id*. Courts addressing analogous consumer-service settings have likewise treated the act of ordering or reserving services as the point of commercial entry, regardless of delayed performance. See, e.g., *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*., 895 F.3d 597, 608–09 (9th Cir. 2018) (treating consumer reservations and orders as entry into the stream of commerce despite later delivery).

Measured against these fact patterns, Plaintiff's conduct here falls squarely within the same commercial entry point. On **April 14, 2022**, Plaintiff booked a consultation for the Penuma procedure with Dr. Kansas after being marketed to, screened, and referred through Defendants' process. [See Ex. A; *Consult Scheduling Confirmation (April 14, 2022*)]. That booking was not exploratory; it was the foreseeable and intended result of Defendants' inducement and placed Plaintiff into the stream of commerce in the same manner as the scheduling in *Head*, *McMillan*, and *Casey*. Consistent with that commitment, on **May 11, 2022**, Plaintiff paid for and completed blood work and related laboratory testing required to satisfy the medical clearance prerequisites

for the Penuma procedure. [See Ex. C; *Billing Statement Reflecting Pre-Operative Medical Testing (May 2022)* and Ex. D; *Laboratory and Diagnostic Records Produced by Defendants (May 2022)*]. These preparatory steps further confirm that Plaintiff had moved beyond inquiry and into reliance. Subsequent events—whether later consultations, regulatory developments, or the eventual surgery—do not redefine when the transaction began. As in the cited cases, Plaintiff stepped into the transaction when he committed to the service by scheduling it and undertaking required medical prerequisites in reliance on Defendants' representations, and the failure to disclose a known material limitation must be evaluated at that point in time.

The undisputed record establishes that Plaintiff's consumer transaction occurred no later than **May 11, 2022**, two days before any expanded FDA clearance issued. By that date:

- Feb 28, 2022 - Plaintiff had been **referred** by Defendants' to consultant with Dr. Kansas;
- Apr 14, 2022 - Plaintiff **booked** an appointment with a Penuma consultation;
- May 11, 2022 - Plaintiff **underwent** medical evaluation and pre-operative testing;
- May 11, 2022 - Plaintiff **paid** for Penuma-related services and advanced toward surgery.

At that point, Plaintiff entered the consumer transaction through Defendants' marketing, screening, and approval process. A failure to disclose is complete when the consumer is induced to act without disclosure of known material information—not when final performance later occurs. See; *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749–50 (Tex. 1999).

The facts relevant to when Plaintiff entered the transaction are undisputed and established by documentary evidence, including scheduling records and medical testing. Resolving when a consumer steps into the stream of commerce under these circumstances does not require credibility determinations or weighing competing evidence, but only application of settled law to an

undisputed timeline. Accordingly, the issue is properly resolved as a matter of law, not by factfinding.

**IV. The Undisputed Timeline Confirms the Nondisclosure**

The documentary record establishes the following undisputed sequence:

- 2016–2017: Penuma was marketed to the public as a cosmetic enhancement procedure through media coverage, website content, and direct communications, without disclosure of a deformity-only FDA limitation.
- 2019: Defendants obtained FDA clearance K181387 limited to cosmetic correction of soft tissue deformities.
- February 11, 2022: Plaintiff's implant was manufactured under K181387.
- February–March 2022: Plaintiff was marketed to, screened, deemed eligible, and referred for cosmetic augmentation without disclosure of the limitation.
- March–May 2022: Defendants sought K220760 to expand indications; FDA warned that "*augmentation*" language risked misleading consumers; Defendants acknowledged that concern internally.
- April 14, 2022: Plaintiff booked consultation for the Penuma procedure with Dr. Kansas.
- May 11, 2022: Plaintiff paid for and completed the medical testing required to satisfy clearance prerequisites.
- May 13, 2022: K220760 cleared, after Plaintiff's inducement and commitment.
- August 2, 2022: Surgery was performed for cosmetic augmentation, with no deformity identified.

This timeline is documentary and undisputed. It forecloses Defendants' effort to collapse pre-clearance inducement into post-clearance surgery.

## V. Defendants' GQ Footnote Confirms—Rather Than Defeats—Plaintiff's Theory

Defendants note that the GQ article referenced in Plaintiff's evidence was authored by an independent journalist and not by Defendants. Plaintiff does not dispute that point.

That clarification does not undermine Plaintiff's showing. It reinforces it.

Even an independent, third-party reporter describing Penuma as a cosmetic enhancement procedure did not identify or disclose a deformity-only FDA limitation. Defendants allowed that portrayal to persist without correction or clarification. Under the DTPA, the duty to disclose rests with the seller who possesses actual knowledge of a material limitation—not with third-party media. See; *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 479 (Tex. 1995).

## VI. Defendants' Proposed Limitation Artificially Truncates the Record

Defendants ask the Court to confine any ruling to three facts ending on May 12, 2022. That framing omits additional undisputed facts defining the transaction itself, including the manufacture of Plaintiff's device under K181387, Plaintiff's inducement and commitment by May 11, 2022, and the absence of any consumer-facing disclosure before those events. [See Ex. A; *Consult Scheduling Confirmation (April 14, 2022*) and Ex. B; *Appointment Reminder Confirmation (May 13, 2022)*].

Plaintiff does not seek findings on intent, causation, damages, or remedies. Plaintiff seeks a ruling that these objective facts are no longer in dispute. Defendants' own response confirms many of them. The remainder are established by the same documentary record and are properly resolved now.

## CONCLUSION

The undisputed record establishes that, at the time Defendants marketed, screened, approved, and directed Plaintiff toward the Penuma procedure, FDA clearance for the device was

limited to cosmetic correction of soft tissue deformities; that Defendants possessed actual knowledge of that limitation; and that Defendants did not disclose it in the consumer-facing materials and communications used to induce Plaintiff's participation in the transaction.

These issues are documentary, objective, and not dependent on credibility or intent. Plaintiff respectfully requests that the Court grant partial summary judgment and treat these facts as established for purposes of trial, with all remaining issues reserved for the triers of fact.

Respectfully Submitted this 3rd day of February 2026.

**Jose M. Gonzalez,** Pro Se
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com

**CERTIFICATE OF SERVICE**

I, Jose M. Gonzalez, Plaintiff pro se, do hereby certify that on the 31st day of January 2026, a true and correct copy of the foregoing:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENTON ON FAILURE TO DISCLOSE**

via email to:

**Defendants**: International Medical Devices, Inc. ("IMD"); Menova International, Inc., ("Menova"); James J. Elist, M.D., a Medical Corporation; and, Dr. James Elist is an individual residing in Beverly Hills, California, as being represented by:

**BOWMAN AND BROOKE LLP**

**Randall L. Christian**
Federal ID No. 15935
Texas Bar No. 00783826
randall.christian@bowmanandbrooke.com

**Jonathan L. Smith**
Federal ID No. 3632192
Texas Bar No. 24088436
jonathan.smith@bowmanandbrooke.com

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**

**Mark J. Dyer**
State Bar No. 06317500
dyer@mdjwlaw.com

**Stephen D. Henninger**
State Bar No. 00784256
henninger@mdjwlaw.com
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019

**DATE: 02/03/2026**

/s/ **Jose M. Gonzalez, Pro Se**
1215 Hidalgo Street #205
Laredo, TX 78040
(956) 608-1811
middlemanadvert@gmail.com