**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| JOSE M. GONZALEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 1:24-cv-00982-DAE |
| | § | |
| INTERNATIONAL MEDICAL DEVICES, | § | |
| INC., *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In his Response to Defendants' Motion for Summary Judgment, Plaintiff presents a somewhat dizzying array of conclusory, undeveloped arguments in support of his Misrepresentation Claim, Failure-to-Disclose Claim, and Failure-to-Warn Claim. But, in addition to being premised on misstatements of law and largely inapposite to the issues at bar, Plaintiff's arguments fail because none are supported by evidence sufficient to present a summary judgment preclusive issue of fact on any of the contested elements.

**A. Plaintiff's Misrepresentation Claim.**

To prevail on his Misrepresentation Claim, Plaintiff must, in part, establish: (1) that Defendants actually represented that the Subject Device was FDA-cleared for "cosmetic augmentation of the penis for aesthetic purposes"; and (2) that this representation was false.[1] In their Motion for Summary Judgment, Defendants establish the absence of a genuine issue of fact as to both elements. As to the first, Defendants show that Plaintiff has no evidence that any

---

[1] *See Best Auto v. Autohaus, LLC*, 339 S.W.3d 372, 375 (Tex. App.—Dallas 2011); Mot. Summ. J. at 1 (defining "Misrepresentation Claim" as Plaintiff's claim that Defendants violated DTPA by "representing the Penuma to be FDA-cleared for cosmetic augmentation of healthy penises when it was actually cleared for cosmetic correction of soft tissue deformities of the penis").

1

33341213v1

Defendant ever made such a representation, and Defendants negate the second by presenting evidence establishing that the Subject Device was, in fact, FDA-cleared for cosmetic penile enhancement for aesthetic purposes. [2] The burden, therefore, shifted to Plaintiff to present evidence sufficient to raise a triable issue of fact on each of these elements.[3] As shown below, Plaintiff has failed to do so, and Defendants are entitled to summary judgment as result.

### 1.    Plaintiff fails to present evidence that the alleged representation was made.

In his Response, Plaintiff does not present evidence that any Defendant ever, in fact, actually represented that the Subject Device was FDA-cleared for cosmetic penile enhancement for aesthetic purposes. Indeed, Plaintiff neither challenges the absence of evidence on this element nor otherwise contends that such a representation was expressly or implicitly made.[4] There is, therefore, no genuine issue of fact as to Plaintiff's Misrepresentation Claim, and Defendants are entitled to judgment as a matter of law on the same.[5]

### 2.    Plaintiff fails to present evidence that the alleged representation was false.

In their Motion for Summary Judgment, Defendants also establish that, even if it was made, the alleged representation concerning the scope of the Device's FDA clearance wasn't false.[6] Defendants do so via the expert testimony of their medical device and regulatory expert, Denise Holliday. Ms. Holliday testified that the Subject Device was FDA-cleared for the correction of

---

[2] Mot. Summ. J., ECF No. 69, at 5-7.

[3] *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986).

[4] Plaintiff instead contends that Dr. Elist, during a recorded lecture given to an audience of urologists, made certain claims concerning the removability of the device that a jury might find misleading. *See* Resp. at 8-9. This contention is addressed below, *see infra* Part D, but irrelevant to the Misrepresentation Claim

[5] *See Celotex*, 477 U.S. at 322-23 ("[S]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial … there can be no 'genuine issue as to any material fact' … [and] the moving party is 'entitled to judgment as a matter of law.'").

[6] Mot. Summ. J., ECF No. 69, at 5-7.

33341213v1

penile soft tissue deformities from January 23, 2019, until May 13, 2022, when FDA updated the scope of its clearance (*i.e.*, its "Indications for Use") to also include "cosmetic augmentation of the penis for aesthetic purposes."[7] Thus, as Ms. Holliday testified, "[t]he Subject Device Plaintiff received on August 2, 2022, was cleared by FDA for cosmetic augmentation of the penis for aesthetic purposes and had been since May 13, 2022."[8]

In his Response, Plaintiff argues that Ms. Holliday's testimony does not "conclusively establish" that the Subject Device was cleared for cosmetic augmentation for aesthetic purposes. This is so, Plaintiff asserts without explanation or supporting authority, because the scope of the Device's FDA clearance is determined by the labeling that accompanied it when it was shipped to Dr. Kansas. Plaintiff goes on to argue that summary judgment is inappropriate because the evidentiary record supports "competing inferences" as to the content of the accompanying labeling and, thus, as to the scope of the Subject Device's FDA clearance.

According to Plaintiff, these "competing inferences" arise because the record evidence does not establish which version of the Penuma labeling accompanied the Subject Device but does establish that the Device (i) was manufactured in February 2022, *i.e.*, when the Penuma was cleared for correction of soft tissue deformities, but (ii) shipped to Dr. Kansas and implanted in Plaintiff after FDA cleared it for cosmetic augmentation for aesthetic purposes. Thus, Plaintiff contends, there is a genuine issue of fact as to whether the Subject Device was shipped to Dr. Kansas with the labeling that was in effect at the time it was manufactured or with the updated labeling in effect at the time it was shipped/implanted. Plaintiff's contentions are meritless.

First, Plaintiff's argument turns entirely on the premise that the scope of the Subject

---

[7] Holliday Dec., ECF No. 69-5, at ¶ 8.
[8] Holliday Dec., ECF No. 69-5, at ¶ 10.

33341213v1

Device's FDA clearance is determined by the content of its accompanying labeling. Plaintiff offers no authority to support this nonsensical proposition because none exists. Moreover, even if the content of the labeling that accompanied the Subject Device were somehow relevant to the scope of its FDA clearance, Plaintiff has not presented any evidence that it was shipped with the outdated labeling.

Second, Plaintiff's so-called "unit-level" evidence neither undermines nor controverts Ms. Holliday's testimony. Plaintiff presents evidence identifying the Subject Device as belonging to IMD Lot No. 896436,[9] together with evidence indicating that said Lot (and, thus, the Subject Device) was manufactured in February 2022.[10] Plaintiff argues that because this "unit-level" evidence establishes that the Subject Device was manufactured before FDA cleared the Penuma for cosmetic augmentation for aesthetic purposes, it casts doubt on Ms. Holliday's conclusion that the updated clearance applied to the Subject Device. Plaintiff is wrong.

Ms. Holliday did, in fact, base her analysis on Device-specific identifying information, including that it belonged to Lot No. 896436.[11] Moreover, Ms. Holliday was fully aware that the Subject Device was manufactured before FDA cleared the Penuma for cosmetic augmentation for aesthetic purposes which is why she took pains to explain:

> Apart from the update of the Subject Device's Indications for Use that became effective May 13, 2022 … there were no other changes between the device as cleared under K181387 and as cleared under K220760. This is so because the device as cleared under K220760 'has identical dimensions, design, materials, and technological characteristics' as the device cleared under K181387. **Accordingly, on May 12, 2022, the Subject Device was cleared by FDA 'for use in the cosmetic correction of tissue deformities,' and on May 13, 2022,**

---

[9] Resp., ECF No. 71, at 5 (citing sealed Exhibits E and I).

[10] *Id.*(citing sealed Exhibit F, an adverse event report obtained from FDA's MAUDE database).

[11] *See* Expert Report of Denise Holliday, ECF No. 69-6, at 8 (identifying the Subject Device's Unique Device Identification No., *i.e.*, B097IMD009XL180132, and its Lot No., *i.e.*, 896436); *see also* Holliday Dec., ECF No. 69-5, at ¶ 3 (authenticating content of her expert report).

33341213v1

**through at least August 2, 2022, it was FDA cleared for 'cosmetic augmentation of the penis … for aesthetic purposes**.'[12]

Thus, contrary to Plaintiff's argument, Ms. Holliday's analysis: (i) is specific to the Subject Device; (ii) considers, and is consistent with, *all* facts Plaintiff claims his summary judgment evidence establishes; and (iii) expressly negates Plaintiff's argument questioning the applicability of the updated FDA clearance given the date of manufacture. Ms. Holliday's testimony, therefore, remains uncontroverted and establishes that the Subject Device was, in fact, cleared by FDA for cosmetic augmentation of the penis for aesthetic purposes and, thus, negates the falsity element of Plaintiff's Misrepresentation Claim.

In sum, Defendants are entitled to summary judgment on the Misrepresentation Claim because Plaintiff has failed to present evidence sufficient to raise a triable issue of fact as to whether: (i) any Defendant ever represented that the Subject Device was FDA cleared for cosmetic augmentation of the penis for aesthetic purposes; or (ii) that the alleged representation was false.

### 3. Defendants are entitled to summary judgment on Plaintiff's make-shift misrepresentation-based DTPA claim as well.

Realizing he has no evidence that Defendants actually made the representations he alleged they did concerning the scope of the Subject Device's FDA clearance, Plaintiff attempts to manufacture a different misrepresentation-based DTPA claim based on statements made by Dr. Elist while giving a lecture to an audience of urologists.[13] Plaintiff claims that during that lecture, Dr. Elist made "affirmative, consumer-salient outcome claims including that the result is 'permanent' yet 'reversible,' and that if a patient 'doesn't want it … you remove it.'"[14]

---

[12] Holliday Dec., ECF No. 69-5, at ¶ 9 (emphasis added).
[13] Resp., ECF No. 71, at 8-9.
[14] *Id*. (citing sealed Exhibit K to the Response).

33341213v1

Plaintiff is grasping at straws, and this misrepresentation claim also fails for two principal reasons. First, as stated in Defendants' Motion for Summary Judgment, any representations made in this academic lecture to fellow urologists cannot be construed as having been made to Plaintiff "in the conduct of trade or commerce."[15] The DTPA defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any good or service,"[16] and nowhere in the lecture does Dr. Elist engage in any such activity.[17] Second, even if these non-commercial statements were actionable under the DTPA, Plaintiff must present evidence establishing their falsity or tendency to deceive, and Plaintiff presents no such evidence or argument.[18]

There is, therefore, no genuine issue of fact as to Plaintiff's make-shift misrepresentation-based DTPA claim, and Defendants are entitled to judgment as a matter of law on the same.

## B. Plaintiff's Failure-to-Disclose Claim.

In his Response, Plaintiff confirms that his Failure-to-Disclose Claim is premised on the proposition that Defendants induced him to receive the Subject Device by not telling him that he was ineligible for the Penuma because it was FDA cleared for correction of soft tissue deformities which Plaintiff did not have.[19] As established in Defendants' Motion for Summary Judgment and the evidence presented therewith, Defendants are entitled to summary judgment on this claim for two reasons. First, there were no FDA-clearance related facts to disclose because the Subject Device was, in fact, cleared by FDA for cosmetic enhancement of any penis and the record evidence—*i.e.*, the testimony of Dr. Kansas—establishes that Plaintiff was eligible for the device. Second, Plaintiff has no evidence that Defendants withheld any alleged material information with

---

[15] *See* Tex. Bus. & Comm. Code § 17.46.
[16] *Id.* at § 17.45(6).
[17] *See generally* sealed Exhibit K to Resp.
[18] *See infra* nn. 31-32 and accompanying text.
[19] Resp., ECF No. 71, 10-11.

33341213v1

the intent of inducing him to receive the Penuma.[20]

In his response, Plaintiff attempts to raise a summary judgment preclusive fact issue on these elements (*i.e.*, non-disclosure and intent) by pointing to his deposition. Plaintiff testified that "during IMD's questionnaire approval process"—*i.e.*, before he first consulted with Dr. Kansas— "nobody told him he did not qualify due to the lack of 'soft tissue deformity,' and he would not have moved forward had he been told the truth."[21] According to Plaintiff, "this testimony alone creates a jury issue on materiality … and circumstantial intent to induce." Not so.

In order to establish that his alleged ineligibility to receive the Subject Device was a material fact that should have been disclosed, Plaintiff must present evidence establishing that he was, in fact, ineligible to receive the Subject Device, which he does not have. As established, the Subject Device is a prescription only medical device that must be surgically implanted.[22] Therefore, to raise a triable issue concerning the materiality of the undisclosed "information," Plaintiff must present evidence from a medical expert establishing that he was not eligible to receive the Subject Device, which he does not have. Moreover, Plaintiff testified that though he has consulted with urologists other than Dr. Kansas regarding his alleged injuries, none have told him that he shouldn't have been prescribed the device because he wasn't an appropriate candidate.[23] Meanwhile, Dr. Kansas, a Board-certified urologist and surgeon, testified that Plaintiff was an appropriate candidate for the Subject Device, and that testimony is uncontroverted. Plaintiff, therefore, has no evidence to support his claim that he was ineligible to receive the Device and, thus, no evidence to support his contention that Defendants failed to disclose material facts.

---

[20] Mot. Summ. J., ECF No. 69, at 7-8.
[21] Resp., ECF No. 71, at 11 (citing Pl's Dep., ECF No. 69-2, at 43:1-13).
[22] Mot. Summ. J., ECF No. 69, at 3.
[23] Exhibit A, Pl's Dep., at 46:15-47:10.

33341213v1

### C. Plaintiff's Failure-to-Warn Claim.

To prevail on his Failure-to-Warn Claim, in light of the learned intermediary doctrine, Plaintiff must show: (1) that the warnings Defendants provided Dr. Kansas were inadequate; and (2) that the failure to provide adequate warnings was the producing cause of his alleged injuries.[24] In their Motion for Summary Judgment, Defendants establish the absence of a genuine issue of fact as to both elements. As to the first element, Defendants show that Plaintiff has no evidence that the warnings Defendants provided Dr. Kansas were defective. As to the second element, Defendants show that Plaintiff has no evidence that the provision of different (*i.e.*, allegedly adequate) warnings to Dr. Kansas would have altered his prescribing decision or prompted him to provide different warnings to Plaintiff.[25] The burden, therefore, shifted to Plaintiff to present summary judgment preclusive evidence on each element, but he has failed to do so.

#### 1. Plaintiff has failed to present evidence that the warnings Defendants provided Dr. Kansas were defective.

In his response, Plaintiff does not present evidence that the warnings Defendants provided to Dr. Kansas were inadequate. Instead, Plaintiff argues that "the record supports a genuine dispute about what IFU/risk/limitation messaging was actually in the prescriber/patient information stream for Plaintiff's lot and counseling."[26] Defendants are not sure what point Plaintiff is attempting to make, but it appears he is arguing that the evidentiary record fails to establish what warnings were actually provided to Dr. Kansas. According to Plaintiff, the uncertainty as to the content of the warnings provided to Dr. Kansas precludes summary judgment.[27] Plaintiff is wrong.

---

[24] *See* Mot. Summ. J., ECF No. 69, at 10.
[25] *Id*.
[26] Resp., ECF No. 71, at 13.
[27] *Id.*

33341213v1

As the party asserting the Failure-to-Warn Claim, Plaintiff carries the burden of proving every element thereof including, as established, that the warnings Defendants provided Dr. Kansas were inadequate. Defendants have carried their summary judgment burden by informing the Court that Plaintiff has failed to designate an expert to opine as to that alleged inadequacy. Plaintiff, therefore, must present evidence of that inadequacy or suffer dismissal of his Failure-to-Warn Claim, and he cannot avoid summary judgment by claiming the record fails to establish what warnings were provided because he has had adequate time for discovery.

Because Plaintiff has wholly failed to present evidence of the alleged inadequacy of the warnings Defendants provided Dr. Kansas, there is no genuine issue of fact as to the Failure-to-Warn Claim, and Defendants are entitled to judgment as a matter of law on the same.[28]

### 2. Plaintiff has failed to present evidence of causation.

Plaintiff acknowledges, as he must, that Dr. Kansas's testimony precludes him from establishing that Dr. Kansas would have elected not to prescribe the Subject Device had Defendants provided different warnings. Plaintiff, therefore, argues that summary judgment is inappropriate because "Defendants have not 'conclusively' negated producing causation … because the record supports a reasonable jury inference that adequate, accurate counseling on removability/permanence and removal/revision consequences would have led Plaintiff to withhold consent."[29] That is, Plaintiff claims that because he testified that he would not have agreed to receive the Device had he been provided accurate counseling there is a triable issue of fact as to causation.[30] Again, Plaintiff is wrong.

---

[28] *See supra* n.5.

[29] Resp., ECF No. 71, at 15.

[30] *Id*. at 14 (erroneously arguing that "the Rule 56 question is what Plaintiff actually understood when he decided to proceed and whether adequate, accurate counseling would have [changed Plaintiff's decision to do so]").

9

First, to raise a fact issue on this theory of causation, Plaintiff must present evidence that different warnings would have: (i) caused Dr. Kansas to give Plaintiff different counseling concerning the risks of proceeding with the implant; *and* (ii) that Plaintiff would have elected not to proceed had Dr. Kansas done so. Thus, Plaintiff's testimony that he would not have agreed to proceed if Dr. Kansas had provided accurate warnings is of no relevance *unless* Plaintiff also has evidence that Dr. Kansas would have changed the counseling he provided to Plaintiff had he himself been provided different information from Defendants, and Plaintiff has no such evidence.

Second, Plaintiff has no evidence that the warnings Dr. Kansas provided concerning "removability/permanence and removal/revision consequences" were inaccurate. Dr. Kansas testified at length as to the warnings he provided on these matters,[31] and Plaintiff has presented no expert evidence nor any other type of evidence establishing that those warnings were inaccurate.[32]

Third, Defendants are not required to "conclusively negate" causation to carry their burden on summary judgment[33] but have done so here. Dr. Kansas testified at his deposition that he has not learned anything since he prescribed the Subject Device that would have changed his prescribing decision *or* caused him to do anything else differently.[34] This testimony negates causation because it establishes that Dr. Kansas would not have changed his prescribing decision nor provided different counseling to Plaintiff even if he knew then all that he knows now.

---

[31] Kansas Dep., ECF 69-1, at 40:14-41:6 (warning of a 15% risk of needing revision surgery); 42:7-19 (same); 46:5-8-11 (risk of removal); 47:3-21 (warning that removal is sometimes necessary and it's a "potential disaster").

[32] *See* accompanying text.

[33] *See* Mot. Summ. J., ECF No. 69, at 5 (establishing a defendant satisfies burden to demonstrate absence of issue of fact by evidence that negates a material element of the plaintiff's claim *or* by showing that there is no evidence to support an essential element of the plaintiff's claim).

[34] Kansas Dep., ECF 69-1, at 47:24-48.

Therefore, to escape summary judgment, Plaintiff must present *evidence* showing that Dr. Kansas would have changed his prescribing decision or counseled Plaintiff differently had Defendants provided him with different information. Plaintiff has presented no such evidence, and, therefore, there is no genuine issue of fact as to his Failure-to-Warn Claim.

### CONCLUSION

Wherefore, premises considered, Defendants respectfully request that they be granted summary judgment as to all claims asserted in this action.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Jonathan L. Smith*
    Randall L. Christian
    Federal ID No. 15935
    Texas Bar No. 00783826
    randall.christian@bowmanandbrooke.com
    Jonathan L. Smith
    Federal ID No. 3632192
    Texas Bar No. 24088436
    jonathan.smith@bowmanandbrooke.com
    2901 Via Fortuna Drive, Suite 500
    Austin, Texas 78746
    Tel: (512) 874-3800
    Fax: (512) 874-3801

*Attorneys for Defendants*

**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

By: */s/ Mark J. Dyer*
    **MARK J. DYER**
    State Bar No. 06317500
    dyer@mdjwlaw.com
    **STEPHEN D. HENNINGER**
    State Bar No. 00784256
    henninger@mdjwlaw.com
    9111 Cypress Waters Blvd., Suite 250
    Dallas, Texas 75019

33341213v1

(214) 420-5500
(214) 420-5501 (telecopier)

**ATTORNEYS FOR DEFENDANTS
JAMES J. ELIST M.D., A MEDICAL
CORPORATION AND DR. JAMES ELIST**

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument and all attachments thereto were filed with the Clerk via the ECF system which will give notice of the filing to Plaintiff, who has registered as an ECF user.

*/s/ Jonathan L. Smith*
Jonathan L. Smith

12

33341213v1